ROSEMARY LEDET, Judge.
I Jn this criminal appeal, the defendant, Derek Barbain, seeks review of his convictions and sentences for sexual battery, aggravated rape, and aggravated incest. For the reasons that follow, we affirm.[1]

STATEMENT OF THE CASE

On October 21, 2011, Mr, Barbain was charged by a three count grand jury indictment with the'following:
h* The sexual battery of T.B.,[2] from May 1,2005. through July'81, 2005, in violation of La. R.S. 14:48.1;
• The aggravated rape of T.B., from . March 1, 2006 to March. 19, 2007,-in violation of La. R.S. 14:42; and
• The aggravated incest of T.B. from March 20, 2007 to July 29, 2011 in violation of La. R.S. 14:78.1.[3]
On October 25, 2011, Mr. Barbain was arraigned; and he pled not guilty. On that same date, the' district court granted defense counsel’s request to schedule a mental competency hearing.
On November 10, 2011, Mr. Barbain was interviewed by Dr. Sarah DeLand and Dr. Harminder Malik. On November 15, 2011, *774 a mental competency hearing was held. Accepting the doctors’ recommendation, the district court found Mr. Barbain competent to stand trial.
On May 2, 2012-, the district court granted Mr. Barbain’s motion to withdraw his right to jury trial and to invoke his right to trial by judge.
On January 11, 2013, the State filed a notice of intent to offer evidence of similar crimes, wrongs, or acts involving previous sexually assaultive behavior or acts by the defendant at the time of trial.under La. Code of Evidence Article 412.2.
| sAfter several continuances, trial was scheduled to commence on August 12, 2013. On the morning of trial, the district court denied Mr. Barbain’s request for a continuance and denied Mr. Barbain’s counsel’s motion to withdraw.[4] In addition, despite defense counsel’s objections, the district court judge stated that he would allow the State to introduce evidence pursuant to La. C.E. art. 412.2.[5] On that same date, a bench trial commenced. On August 13, 2013, the trial concluded; the district court judge found Mr. Barbain guilty as charged on all three counts.
Mr. Barbain’s counsel requested a mental competency hearing before the district court heard, post-trial motions and conducted sentencing. On February 6, 2014, a mental , competency hearing was held at which. Dr. Michael Blue testified. Accepting Dr. Blue’s recommendation,, the district court found Mr. Barbain | .^incompetent for post-trial motions and sentencing.[6] On October 9, 2014, the district court held another competency hearing, at which Dr. Thomas Oden testified. Accepting the recommendation of Dr. Oden, the district court found Mr. Barbain *775 competent to proceed with post-trial motions and sentencing. .
On November 18, 2014, Mr. Barbain filed a motion for new trial. On December 8, 2014, the district court denied Mr. Bar-bain’s motion for new trial and granted his motion for appeal. On December 9, 2014, the district court sentenced Mr. Barbain to ten years at hard labor without benefit of parole, probation, or suspension of sentence for sexual battery; life imprisonment without benefit of parole, probation, or suspension of sentence for aggravated rape; and ten years at hard labor for aggravated incest, all to be served concurrently and with credit for time served. This appeal followed.

STATEMENT OF THE FACTS

T.B., the victim, was- born on March 20, 1994. Her mother, L.B., started dating Mr. Barbain in the summer of 2000. Shortly thereafter, Mr. Barbain and his daughter, D.R., moved in with L.B. and her children, T.B. and C.R. In 2005, after moving to the Willowbrook Apartments in New Orleans,, Mr. Barbain touched T.B.’s genitals over her clothes and ins'erted his finger into her vagina.
IsOn July 30,2005, L.B. and Mr. Barbain were married. After Hurricane Katrina struck the New Orleans area in August of 2005, the family temporarily relocated to Texas. In 2006, the family moved back to New Orleans into a leased house on Haynes Boulevard, near Crowder Boulevard. Before moving in, Mr. Barbain asked T.B. if she wanted to view the house before anyone else. While at the house, Mr. Barbain undressed T.B. and had vaginal intercourse with her. After the family moved into the residence, Mr. Barbain continued having sex — vaginal, and oral— with T.B.
C.R., T.B.’s brother, routinely checked on his mother at night due to her back problems. On many occasions, he observed Mr. Barbain entering T.B.’s bedroom. C.R. witnessed Mr. Barbain exiting T.B.’s room an hour or two later with a big Koolaid smile on his face. On one occasion, while Mr. Barbain was babysitting T.B. and C.R., he touched T.B.’s breasts, vagina, and butt before positioning himself on top of her. C.R. entered the room and witnessed Mr. Barbain on top of T.B. in bed having sex. Mr. Barbain explained that he and T.B. were wrestling and or-'' dered C.R. to leave the room.
Between 2007 and 2008, the family moved to a residence on Haynes Boulevard, near Bullard Avenue. Mr. Barbain continued having sexual intercourse with T.B. During this time, Mr. Barbain frequently sent C.R. to the store. While C.R. was out of the house, Mr. Barbain would touch her inappropriately. T.B. also testified that she would awaken at night to see Mr. Barbain .standing over her touching himself.
RThe abuse continued throughout 2009 and 2010, after the family moved to a residence on Vanderkloot Avenue in New Orleans. By this time T.B. was around sixteen years old, anc( she knew what Mr. Barbain was doing to her was wrong. The abuse became less frequent. Mr. Barbain however attempted to continue the abuse by promising T.B. money and gifts. In response, T.B. started acting out, talking back to her mother and Mr. Barbain, and getting in altercations with them.
T.B. initially did not confide in anyone about the abuse. She was embarrassed and afraid to tell her mother out of fear that her mother’s depression would cause her to harm herself. T.B. testified that her father, Julius Ivery,[7] had a bad tem *776 per; she was afraid he would have physically hurt Mr. Barbain if she disclosed the abuse.
' On July 29, 2011, T.B. was in a heated altercation with her mother and Mr. Barbain regarding her disrespectful attitude. When Mr, Barbain picked T.B. up from work that afternoon, he attempted to give her á bracelet as an apology. Not wanting Mr. Barbain to touch her, T.B. refused to accept the bracelet. Upon returning home, an altercation ensued when L.B. learned that T.B. did not accept the bracelet. After the altercation with her mother, T.B. called Mr. Ivery and asked that he come get her.
After Mr. Ivery arrived at T.B.’s house on Vsinderkloot Avenue, they went for a drive. Mr. Ivery noticed that T.B. was very emotional and crying. He asked T.B. if her mother hit her of if someone touched her; T.B. responded that she was touched. When he inquired tether, T.B. stated that she did not want to explain. Mr. Ivery testified that he knew instantly that she meant she was touched sexually, but he refused to ask her any tether questions. Ho returned to the residence to‘ speak with L.B. and Mr. Barbain. Mr. Ivery informed L.B. of what T.B. disclosed. Meanwhile, Mr. Barbain left the area. Later that day, Mr. Ivery called 911 and reported what T.B. disclosed.[8]

DISCUSSION

Assignment of Error Number 3

Mr. Barbain’s third assignment of error is insufficiency of the evidence, We address this assignment first in accordance with the well-settled jurisprudential rule that “[w]hen issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.’ ” State v. Miner; 14-0939, p. 5 (La.App. 4 Cir. 3/11/15), 163 So.3d 132, 135 (quoting State v. Hearold, 603 So.2d 731, 734 (La.1992)).
The Louisiana Supreme Court noted in State v. Brown, 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18, the standard for determining an insufficiency of evidence claim is as follows:
InWhen reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard , enunciated in Jackson v. Virginia, 448 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact- that all of - the elements of the crime had been proved beyond a reasonable doubt.” State v. Neal, 00-0674, (La.6/29/01) 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)).

Id.

The determination of credibility is a question of fact within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Brown, 12-0853, p. 2 (La.App. 4 Cir. 2/6/13), 109 So.3d 966, 968 (citing State v. Holmes, 06-2988, p. 34 (La.12/2/08), 5 So.3d 42, 68; State v. Vessell, 450 So.2d 988, 948 (La.1984)). “It is *777 not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence.” State v. Richards, 11-0349, p. 9 (La.App. 4 Cir. 12/1/11), 78 So.3d 864, 869 (citing State v. Cummings, 668 So.2d 1132 (La.1996); State v. Rosiere, 488 So.2d 966, 968 (La.1986)).
In the absence of internal contradiction or an irreconcilable conflict with the physical evidence, a single witness’ testimony, if believed by the fact finder, is sufficient to support a factual conclusion. State v. Rapp, 14-0633, pp. 6-7 (La.App. 4 Cir. 2/18/16), 161 So.3d 103, 108 (citing State v. Marshall, 04-3139, p. 9 (La.11/29/06), 943 So.2d 362, 369). When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of credibility of the witness, the matter is one of the weight of the evidence, not-its-sufficiency. State v. Edgar, 12-0744, p. 16 (La.App. 4 Cir. 9/18/13), 140 So.3d 22, 34 writ denied, 13-2462 (La.4/4/14), 136 So.3d 638 (citing State v. Allen, 94-1896, p.7 (La.App. 4 Cir. 9/16/96), 661 So.2d 1078, 1084).
Mr. Barbain contends that the evidence presented at trial was insufficient to support his convictions. Mr, Barbain contends that the State failed to prove each of. the counts beyond a reasonable doubt, including T.B.’s age on the pertinent dates. He also contends that the State failed to produce credible evidence of the allegations against him. Mr. Barbain was convicted of the following three offenses: (i) sexual battery, (ii) aggravated rape, and (iii) aggravated incest. We separately address the elements and proof of each of these offenses.

Semal Battery

At the time of the offense, La, R.S. 14:43.1 defined sexual battery in pertinent part as follows:
[T]he intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person ... has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender...
To support a conviction for sexual battery, the State was required to prove beyond a reasonable doubt the following: (1) between May 1, 2006 and July 81, 2005; (2) T.B. was under fifteen years old at the time of the offense; (8) T.B. was at least three years younger than Mr. Barbain; and (4) Mr. Barbain touched T.B.’s genitals using an instrumentality or any part of his body.
|1(iMr. Barbain contends that there was insufficient evidence to establish that he committed the sexual battery of T.B. He first alleges that the State arbitrarily selected the date range in order to charge him under this statute.[9] Mr. Barbain also contends that the testimony of T.B., C.R., D.R., and L.B. was completely inconsistent. ’Specifically, he claims ‘ that there was conflicting testimony regarding who was living at the Willowbrook Apartments, who slept in which bedroom, and where Mr. Barbain was sleeping. Due to the lack of forensic or corroborative evidence, *778 Mr. Barbain contends that this conviction cannot stand on inconsistent testimony.
In cases involving sexual offenses, the testimony of the victim alone may be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. State v. Reel, 10-1737, p. 8 (La.App. 4 Cir. 10/3/12), 126 So.3d 506, 513, writ denied, 12-2433 (La.4/12/13), 111 So.3d 1018 (citing State v. Hotoph, 99-243, p. 13 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045); see also State v. Williams, 49,249, p. 7 (La.App, 2 Cir. 10/1/14), 149 So.3d 462, 468, writ denied, 14-2130 (La.5/22/15), 173 So.3d 1167 (holding that “[t]he testimony of a sexual assault victim alone is sufficient to convict a defendant.”).
In the present case, the State presented only testimonial evidence. T.B. testified that she first met Mr. Barbain when she was eight or nine years old when Inhe started dating her mother. She recalled that, initially, she had good relationship with Mr. Barbain and his daughters. T.B. testified that she first noticed Mr. Barbain looking at her inappropriately in 2004, when she was about ten years old.
Both T.B. and D.R. testified that the family moved to the Willowbrook Apartments in 2005 and that Mr. Barbain would occasionally sleep in the front room of the apartment with his children. T.B. testified that one night while in the front room, Mr. Barbain put his hand on her leg and moved it up to her vagina. He began touching her genitals over her clothes; then he went underneath her clothes and inserted his finger into her vagina. Further, there was testimony establishing that T.B. was eleven years old at the time.[10] D.R. also testified that she witnessed Mr. Barbain on top of T.B. in 2005, when they resided in the Willowbrook Apartments.
Three defense witnesses — Darrin Bar-bain, Debra Barbain Johnson, and Deriane Bush — testified that they never witnessed any inappropriate behavior between Mr. Barbain and any children. Darrin Bar-bain, Mr. Barbain’s brother, testified that Mr. Barbain frequently watched his two young children and his sister’s children. He thus nicknamed Mr. Barbain “Daddy’s Day Care.” According to Darrin Barbain, he never observed any inappropriate behavior between Mr. Barbain and any children.
Debra Barbain Johnson, Mr. Barbain’s sister, testified that she knew T.B, to be a rebellious teenager, who was disrespectful and refused to listen. According to Ms. Johnson, Mr. Barbain babysat her daughters on numerous occasions. She testified that she never witnessed any inappropriate behavior between Mr. Barbain and her daughters or any other children. Ms. Johnson, described Mr. Barbain as nurturing and caring. She also recalled visiting her brother’s residence on July 29, 2011, after T.B. made the allegations of abuse. Ms. Johnson questioned C.R. regarding whether he had ever witnessed anything between T.B. and Mr. Barbain to which C.R. responded in the negative,
Deriane Bush, Mr. Barbain’s daughter, testified that she lived with her father, L.B., T.B., and C.R. at the Haynes Boulevard residence in 2008 and later at the Vanderkloot residence. While living at the Vanderkloot address, she slept in T.B.’s room. During this time, Ms. Bush never witnessed Mr. Barbain touch T.B. inappropriately. Ms. Bush also stated that Mr. Barbain never touched her inappropriately.
*779 Although Mr. Barbain suggests that' there was conflicting testimony, it is not the role of this court to assess the credibility of witnesses or to reweigh the evidence. Richards, supra; Rosiere, supra; see also State v. Rowan, 97-21, p. 7 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056 (holding that “[wjhere there is conflicting testimony as to factual matters; the' quéstion of the credibility of the witnesses is within the sound discretion of the trier óf fact, who may accept or reject, in whole or in part, the testimony of any witness.”). After observing all of the witnesses and weighing the evidence, the district court, as the trier of fact, | ^assessed and convicted Mr. Bar-bain of sexual battery. The testimony of T.B. and D.R.’s support this finding.

Aggravated Rape

Aggravated rape, at -the time of the offense, was defined in pertinent part as follows:
[A] rape committed ... where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances: ....
(4) When the victim is under the age of thirteen years.
La. R.S. 14:42. Accordingly, the State was required to prove beyond a reasonable doubt the following to support a conviction for aggravated rape: (1) between March 1, 2006 and March 19, 2007; (2) T.B. was under thirteen years old; and (3) Mr. Barbain had anal, oral, or vaginal sexual intercourse with T.B.
Mr. Barbain contends - that the State did not prove he committed the aggravated rape of T.B. beyond a reasonable doubt. Specifically, he contends that the State did not present evidence as to the time of year the alleged rape occurred. Since T.B. turned thirteen March 20, 2006, Mr. Barbain avers that the State failed to prove that T.B. was under the age of thirteen at the time of the rape. Additionally, Mr. Barbain contends that the State did not present any forensic ^evidence or other type of evidence corroborating T.B.’s allegations; rather, the State’s evidence relied solely on inconsistent testimony.
T.B. testified that before moving into the residence on Haynes Boulevard near Crowder Boulevard in 2006, Mr. Barbain brought her to the residence where |14he removed her clothes and had vaginal intercourse with her. On cross examination, T.B, testified that she was eleven or twelve years old when she first had intercourse with Mr. Barbain. See Edgar, 12-0744 at p. 15-16, 140 So.3d at 33-34 (holding that the victim’s testimony alone was sufficient to support defendant’s conviction for attempted aggravated rape). Reel, supra; Williams, supra; see also State v. Allen, 02-593, p. 3 (La.App. 3 Cir. 11/6/02), 830 So.2d 606, 608 (finding that “[tjhe victim’s testimony, alone, is sufficient to establish the fact of penetration.”). T.B. further testified that after moving into the residence, Mr. Barbain continued having intercourse — vaginal ánd oral — with her “too many [times] to count.”
The victim’s brother, C.R., also testified that Mr. Barbain treated T.B. like a queen and that he showered her with gifts. He also recalled an incident that occurred at the Haynes and Crowder residence. According to C.R:, he was in the adjoining bathroom preparing to “take a shower. When he walked back into the bedroom, he witnessed Mr. Barbain on top of T.B., in between her legs, in his mother’s bed.[11]
*780 C.R. described what he witnessed as “the missionary style. She was on her back. He was on top of her.” He described their movement as a bounce, “[l]ike how you bounce a basketball.” At trial, C.R. testified in part as follows:
Q. What did you tell your mother?
IirA. That I seen [sic] my sister [T.B.] and Mr. Derek [Barbain] having sex in the bed. ’
Q. And are you sure they were having sex?
A, Yes, ma’am.
After Mr. Barbain explained that he and T.B. were wrestling, C.R. returned to the bathroom. When C.R. finished his shower, he reentered the bedroom. He noticed T.B. sitting on the end of the bed wearing a different pair of shorts, and' Mr. Barbain lying on the bed. After T.B. reported the sexual abuse, C.R. divulged what he had seen to their mother.[12] After informing his mother of the incident, C.R. was interviewed by Joshua Long, forensic interviewer and case manager at the 'Child Advocacy Center (“CAC”) and Audrey Hepburn Care Center.[13] On cross examination, counsel for Mr. Barbain played the CAC interview of C.R. to refresh his memory and for impeachment purposes, C.R.’s statements in the interview with Mr. Long mirrored his trial testimony.[14]
D.R. testified that she was also raped by her father, Mr. Barbain. When she was thirteen years old, she moved in with Mr. Barbain, L.B., T.B., and C.R. D.R. also testified occasionally slept on the sofa with Mr. Barbain.[15] One night, when I ifieveryone else in the house was asleep, Mr. Barbain was. alone with . D.R. on the living room sofa; he pulled down her pants and penetrated her vagina with his penis. Mr. Barbain later told D.R. not to tell anyone. He also told her that he loved her and that it-would be their secret.- D.R. testified that from 2003 to 2005 Mr. Bar-bain had sex with her “hundreds of times.” According to D.R., Mr. Barbain continued having sex with her after the family moved to the Willowbrook Apartments in 2005, but it became less frequent. D.R. recalled one night that she woke in the middle of the night and witnessed Mr. Barbain moving on top of T.B. Later, D.R. confronted Mr. Barbain, but Mr. Barbain denied doing anything to T.B.
Before Hurricane Katrina, D.R. learned she was pregnant and had an abortion.[16] For -the hurricane, the family evacuated to Texas, where the sexual abuse of D.R. continued. When the family returned to New Orleans in 2006, D.R. went to live with her sister in Baton Rouge. During one of D.R.’s visits to New Orleans, Mr. Barbain purchased alcohol for D.R. and *781 T.B. She recalled not being able to move very much '.from drinking an abundance of alcohol; and Mr. Barbain had sex with her. The next morning she overheard Mr. Bar-bain and T.B. having an argument. This was the last sexual encounter Mr. Barbain had with D.R.
As noted above, the district court convicted Mr. Barbain of aggravated rape. T.B.’s testimony — coupled with her birth certificate — establish that she was between eleven and twelve years old when Mr. Barbain first began having ^intercourse with her. Both C.R.’s and D.R.’s testimony support the finding that Mr. Barbain was having sex with'T.B. Moreover, D.R. testified that Mr. Barbain raped her multiple times. As outlined above, three defense witnesses — Darrin Barbain,- Ms. Johnson, and Ms. Bush — testified that they never witnessed any inappropriate behavior between Mr. Barbain and any children. Determining the credibility of the witnesses and weighing of the evidence are functions within the sole discretion of the trier of fact. Cpntrary to Mr. Bar-bain’s contentions, there was sufficient evidence to support his conviction for aggravated'rape.

Aggravated Incest

At the time of the offence, aggravated incest was defined in La. R.S. 14:78.1, which provided, in pertinent part, as follows:
A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offendér to be related to the offender as any of the following biological, step, or adoptive relatives: child ..,
B. The following are prohibited acts under this Section:
(1) Sexual intercourse, sexual battery
[[Image here]]
(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to-with the intent to-arose or to satisfy the sexual desires of either the child, the offender, or both..
To support a conviction for aggravated incest, the State was required to prove the following: (1) between March 20, 2007 and July 29, 2011; (2) T.B. was under eighteen years old; (3) T.B. was Mr. Barbain’s stepchild; and, (4) Mr. Barbain engaged .in sexual intercourse or he committed sexual battery on T.B. or Mr. Barbain.
lisMr. Barbain contends that T.B. made no specific allegations regarding sexual abuse during his marriage to L.B. She merely alleged abuse in 2006 or 2007 at the Haynes and Bullard address and in 2009 or 2010 a¡t the Vanderkloot address. Mr. Barbain also contends, that the testimony regarding who resided in these residences was completely inconsistent. He maintains that the lack of forensic or corroborative evidence coupled with the inconsistent testimony of various witnesses is insufficient to support his conviction of aggravated incest.
As noted above, L.B, married Mr. Bar-bain on July 30, 2005. ( T.B. testified that Mr. Barbain continued having sexual intercourse with her between 2007 and 2010 at the Haynes and Bullard residence and the Vanderkloot residence. During this time, T.B. was between ages thirteen and seventeen. T.B. further testified that she witnessed Mr. Barbain in her room in the middle of the night standing over her while “touching himself and things of that nature.” She also testified that while living on Vanderkloot, Mr. Barbain continued to touch her vagina, breasts, ‘and buttocks. L.B. also testified that she informed a detective that when the- family lived on Vanderkloot Street, Mr. Barbain would-get up during the night to go check the house or to “have a conversation with [T.B.].”
In addition to the three -other .defense witnesses; as noted above, the trial judge *782 also heard testimony from Connie Newman. Ms. Newman, Mr. Barbain’s girlfriend of six years, testified that she began dating Mr. Barbain in October of 2007. According to Ms. Newman, Mr. Barbain’s wife, L.B., was aware of their relationship. She stated that Mr. Barbain continued living with L.B. for the |1flchildren because they had nowhere else to go. Ms. Newman further testified that she had a sexual relationship with Mr. Barbain. Since becoming intimate with Mr. Barbain, Ms. Newman has not contracted any sexually transmitted diseases-such as Trichomo-pas.[17] On cross examination, she stated that she was aware that both L.B. and T.B. had contracted Trichomonas.
Contrary to Mr. Barbain’s contentions, T.B.’s testimony supports his conviction of aggravated incesfi T.B. testified that, while she was between ages thirteen and seventeen, Mr. Barbain continued having sexual intercourse with her, he touched her genitalia, and he touched himself in front of her. See Reel, supra. As noted above, the district court observed the testimony'of three defense witnesses, all of whom testified that they never witnessed any inappropriate behavior between Mr. Barbain and any children. Ms. Newman also testified that she had not contracted Trichomonas; meanwhile, both L.B. and T.B. had contracted Trichomonas at’ some point. As previously stated, determining the credibility of the witnesses and weighing the evidence are within the sole discretion of the trier of fact. Nonetheless, the testimony, of the victim alone may be sufficient to establish the elements of a sexual offense.
In sum, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that Mr. Barbain committed sexual battery, aggravated rape, and aggravated incest of T.B. |an Based on the testimony presented, we conclude that all of the essential elements of each crime were proven. This assignment of error is without merit.

Assignment of Error Number 1

In his first assignment of error, Mr. Barbain contends that the district court erred by denying his motion for continuance of the trial for the purpose of appointing a sanity commission. Specifically, Mr. Barbain claims that he has an I.Q. of 56, that he suffers from schizophrenia, and that he- cannot read or write. He contends that he was not on medication for two months before trial and was unable to assist counsel. Mr. Barbain thus maintains that forcing him to proceed to trial when he was incompetent deprived him of his rights to present a defense and to a fair trial.
It is well-established that the United States Constitution prohibits the criminal prosecution arid conviction of a legally incompetent person. Medina v. California, 505 U.S. 437, 439, 112 S.Ct. 2572, 2574, 120 L.Ed.2d 353 (1992) (citing Drope v. Missouri, 420 U.S. 162, 95’ S.Ct. 896, 43 L.Ed.2d 103 (1975); Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)).
Louisiana’s statutory scheme regarding detecting mental incapacity safeguards a defendant’s right to a fail’ trial. State v. Carmouche, 01-0405, p. 30 (La.5/14/02), 872 So.2d 1020, 1041. In Louisiana, “[mjental incapacity to proceed exists when, as a result of mental disease *783 or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist- in his defense.” La.C.Cr.P. art, 641. The law also imposes a legal presumption -that a defendant is sane |81and competent to proceed. La. R.S. 15:432; Carmouche,. supra, (citing State v. Bridgewater, 00-1529, p. 6 (La.1/15/02), 823 So.2d 877, 888; State v. Martin, 00-0489, p. 1 (La.9/22/00), 769 So.2d 1168, 1169; State v. Armstrong, 94-2950, p. 4 (La.4/8/96), 671 So.2d 307, 309; State v. Silman; 95-0154, p. 7 (La.11/27/95), 663 So.2d 27, 32.). According to La.C.Cr.P. art. 642, a party may raise the defendant’s mental incapacity to proceed at any time, and when raised, “there shall be no further steps in the criminal prosecution ... until the defendant is found to have the mental capacity to proceed.” Further, La.C.Cr.P. art. 643 provides as follows:
The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant’s mental capacity to proceed. Prior to the ordering of any such mental examination, the court shall appoint counsel to represent the defendant if he has not already retained counsel.
Louisiana jurisprudence, however, has held that the defendant, has the burden of proving his incapacity to stand trial by a preponderance of the' evidence. State v. Odenbaugh, 10-0268, p. 6 (La.12/6/11), 82 So.3d 215, 227 (noting that “there is a presumption of sanity, and before the court is required to appoint a sanity commission, the defendant has the burden to establish his incapacity to stand trial by a clear preponderance of the evidence.”); Bridgewater, 00-1529 at p. 14, 823 So.2d at 892; State v. Frank, 96-1136 (La.10/4/96), 679 So.2d 1365, 1366 (stating that it is a “jurisprudential rule that a criminal defendant need prove his | ^incapacity to proceed only by a clear preponderance of the evidence.”).[18] In Odenbaugh, Supra, the Louisiana Supreme Court held as follows:
Because no scientific evidence was introduced pretrial to support the defendant’s claim that the trial court erred in failing to find reasonable grounds to order a sanity commission on its own motion, defendant relies on anecdotal evidence from the pre-trial record that might suggest mental illness. However, nothing presented to the court directly called into question defendant’s ability to assist counsel or understand the charges against him. Defense counsel failed to present evidence that proved that the defendant could not: recall facts pertaining to his actions; listen to the witnesses’ testimony and inform his lawyer of any misstatements; or testify in his own defense.
10—0268 at pp. 11-12, 82 So.3d at 230.
“The fact that the defendant’s capacity to proceed is called into question does not, for that reason alone, require the trial court to order a mental examination *784 of the defendant; rather it must have reasonable grounds to doubt the defendant’s capacity.” State v. German, 12-1293, p.19 (La.App. 4 Cir. 1/22/14), 133 So.3d 179, 194, writ denied, 14-0396 (La.11/26/14), 152 So.3d 897 (citations omitted). This court in the Germcm case further noted as follows:
Defense counsel’s motion to appoint a sanity commission cannot rest on mere allegations without supporting evidence to show that a defendant is unable to understand the nature of the proceedings. [State v.] Bickham, 404 So.2d [929,] 935 [ (La.1981) ]. The determination of whether there are reasonable grounds to doubt a defendant’s mental capacity and to order a mental examination lies within the discretion of the trial court and the trial court’s determination will not be set aside absent a clear abuse of discretion. Id., 404 So.2d at 934; State v. Gauthier, 07-0743, p. 10 (La. App. 4 Cir. 3/12/08), 978 So.2d 1161, 1168.
Id.[19]
In the present case, Mr. Barbain failed to meet, his burden of proving by a preponderance of the evidence that he was incompetent to stand trial. Defense counsel first raised the issue of Mr. Barbain’s competency on the morning of trial in his motion for continuance. Defense counsel requested to diseuss this issue off the record and ex parte. At the pre-trial hearing on this motion, defense counsel presented no evidence to support the claim that Mr. Barbain was incompetent. Rather, defense counsel stated that Mr. Barbain had a low I.Q.; was not able to reád and write; had a diagnosis of schizophrenia; suffered deprivation of his medication prior to trial; had hallucinations; and was unable to understand the proceedings and assist counsel with trial preparation.
During the pre-trial hearing, the district court noted that a mental competency hearing was held on November 15, 2011, at which Mr. Barbain met the State v. Bennett, 345 So,2d 1129, 1138 (La.1977) criteria and was found competent to stand trial.[20] The district court based its ruling on the expert testimony of Dr. DeLand, who testified at the November 15, 2011 hearing as follows:
*785 We were asked to evaluate Mr. Bar-bain regarding his competency to proceed Mr. Barbain was polite and cooperative with the interview. He did give us a long history of psychiatric illness starting from when he was approximately five years old, being in and out of the hospital since then. At one point as.an adolescent, he stayed in a psychiatric facility for a number of years. He has very limited schooling and cannot effectively read or write. He has been treated over the years at various mental health clinic and hospitals, the most recent one being the New Orleans Mental Health Clinic where he was diagnosed with schizophrenia. He is currently receiving psychiatric medications in the jail, at this time; although, he was not able to tell, us exactly what medicines they are. However, during the interview, we did not see any overt signs of any type of psychotic symptoms that would interfere, with his ability to understand the proceedings or effectively assist his attorney.
Further, when we specifically asked questions regarding the Bennett criteria, again, Mr. Barbain was very cooperative and appeared to be very forthcoming and he was able to satisfactorily answer all the questions we posed to him regarding the Bennett criteria, including things like how serious his charge was, and what the various players in the courtroom did, what the consequences were of the different pleas that he could enter, that kind of thing. He also related to us a willingness to help his attorney as best as he could by la-working with his attorney and answering questions. We also did. not note any particular difficulties that he had with memory or communication with the exception of the difficulty with written language that would impair his ability to assist-.his attorney. ••
Dr. DeLand was also asked whether she believed the fact that Mr. Barbain was unable to read and write would hinder his ability to assist in'his defense. Her response was that' “it would be much more difficult than were he able to read and write. However, that alone does not preclude his being able to assist his attorney.”
On the, morning of trial, Mr. Barbain was presumed to be competent, and he failed to present any reasonable grounds to doubt his capacity to proceed. Subsequently, Mr. Barbain was found incompetent for post-trial motions and sentencing. Nonetheless, the record is devoid of any evidence that directly called into question his ability to assist counsel at trial or to understand the charges against him. See Odenbaugh, supra., We cannot find that the district court abused its discretion in denying Mr. Barbain’s motion for continuance of the trial to appoint a sanity commission. This assignment of error is without merit.

Assignment of Error Number 2

In his second assignment of error, Mr. Barbain contends that he was denied due process and adequate representation due to his counsel, both retained and appointed, being ineffective.
In State v. Rubens, 10-1114, pp. 58-59 (La.App. 4 Cir. 11/30/11), 83 So.3d 30, 66-67, this court reviewed the jurisprudence *786 on ineffective assistance of counsel, as follows: ■
[“As a general rule,' claims of ineffective assistance of counsel are more properly raised by application for post-conviction relief in the trial court where a full evidentiary hearing may be conducted if warranted.” State v. Howard, 98-0064, p. 15 (La.4/23/99), 751 So.2d 783, 802. However, where the record is sufficient, the claims may be addressed on appeal. State v. Bordes, 98-0086, p. 7 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147. Ineffective assistance of counsel claims are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Brooks, 94-2438, p. 6 (La.10/16/95), 661 So.2d 1333, 1337 (on rehearing); State v. Robinson, 98-1606, p. 10 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 126. In order to prevail, the defendant must show both that: (1) counsel’s performance was deficient; and (2) he was prejudiced by the deficiency. Brooks, supra; State v. Jackson, 97-2220, p. 8 (La.App. 4 Cir. 5/12/99), 733 So.2d 736, 741, Counsel’s performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064; State v. Ash, p. 9 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 669. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel’s deficient performance the result of the proceeding would have been different; “[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 693, 104 S.Ct. at 2068; State v. Guy, 97-1387, p. 7 (La.App. 4 Cir. 5/19/99), 737 So.2d 231, 236.
This court has previously recognized that if an alleged error falls “within the ambit of trial strategy” it does not'“establish ineffective assistance of counsel.” Bordes, 98-0086, p. 8, 738 So.2d at 147, quoting State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4 Cir.1986). Moreover, as “opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.” Id. quoting State v. Brooks, 505 So.2d 714, 724 (La.1987).
In the present case, Mr. Barbain raises eight different claims regarding the ineffective assistance of counsel issue.[21] Because the record on appeal does not [ ^contain adequate information to address all of the claims Mr. Barbain raises, we *787 find that this issue is more properly raised by an application for post-conviction relief on which a full evidentiary hearing may be conducted. See State v. Deruise, 98-0541, p. 34 (La.4/3/01), 802 So.2d 1224, 1248; State v. Hampton, 98-0331, p. 8 (La.4/23/99), 750 So.2d 867, 877.

Assignment of Error Number 4

In his fourth assignment of error, Mr. Barbain contends that his sentences are unconstitutionally excessive given his status as a first offender and his history of mental illness.
The district court sentenced Mr. Bar-bain to ten years at hard labor without benefit of parole, probation, or suspension of sentence for the sexual battery; life imprisonment without benefit of parole, probation, or suspension of sentence for the aggravated rape;' and ten years at hard labor for the aggravated incest; all to be served concurrently.
sMr. Barbain failed to object to his sentences at the sentencing hearing. Nor did he make or file an oral or written motion to reconsider as required by La. C.Cr.P. art. 881.1(E).[22] Ordinarily, the failure to file a motion to reconsider sentence precludes a defendant from raising an excessive sentence argument on appeal. See State v. Johnson, 13-0947, p. 4 (La. App. 4 Cir. 1/15/14), 133 So.3d 67, 70, writ denied, 14-0365 (La.9/12/14), 147 So.3d 705; State v. Mims, 619 So.2d 1059, 1059-60 (La.1993). Given Mr. Barbain’s claim of ineffective counsel, however, we choose to consider his argument that his sentences are excessive, despite the absence of a motion to reconsider sentence. See State v. Wilkinson, 99-0803, p. 3 (La.App. 1 Cir. 2/18/00), 754 So.2d 301, 303.
Both the Eighth Amendment of the United States Constitution and the Louisiana Constitution, Article I, § 20, prohibit the imposition of cruel and unusual punishment. Additionally, the Louisiana Constitution explicitly prohibits “excessive” punishment. La. Const, art. I, § 20. The Louisiana Constitution differs from the Eighth Amendment to the U.S. Constitution in its explicit prohibition of excessive sentences. This “deliberate inclusion by the redactors of the Constitution of a prohibition against ‘excessive’ as well as cruel and unusual punishment broadened the duty of this court to. review the sentencing aspects of criminal statutes.” State, v. Hamdalla, 12-1413, p. 14 (La.App. 4 Cir. 10/2/13), 126 So.3d 619, 626 writ denied, 13-2587 (La.4/25/14), 138 So.3d 642 (quoting State v. Baxley, 94-2982, p. 4 (La.5/22/95), 656 So.2d 973, 977).
In determining the excessiveness of a sentence, the .test employed by appellate courts is two-pronged. First, it must be determined whether the district court adequately complied with the statutory sentencing guidelines set forth in La. C.Cr.P. art. 894.1.[23] Second, it must then *788 determine whether the sentence the district court imposed is too severe, in light of the particular defendant as well as the circumstances of the .ease; “keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged." State v. Jasper, 14-0125, p. 19 (La.App. 4 Cir. 9/17/14) 149 So.3d 1239, 1252 (citing State v. Trepagnier, 97-2427 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189); see also State v, Hollins, 11-1435, p. 47 (La.App. 4 Cir. 8/29/13), 123 So.3d 840, 871, writ denied 13-2555 (La.4/25/14), 138 So.3d 642; State v. Landry, 03-1671, p. 8 (La.App. 4 Cir, 3/31/04), 871 So.2d 1235, 1239.
A sentence is constitutionally excessive if “it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime.” State v. Hartford 14-0643, p. 12 (La.App. 4 Cir. 3/18/16) 162 So.3d 1202, 1209 (quoting State v. Dorthey, 623 So.2d 1276, 1280 (La.1993)); see also Hamdalla, 12-1413 at p. 14, 126 So.3d at 626. For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const. art. 1, § 20, i.e., when it imposes ?punishment disproportionate to the offense.’? Hollins, 11-1485 at p. 48, 123 So.3d at 871 (citing State v, Soraparu, 97-1027 (La.10/18/97), 708 Se.2d 608). The only relevant question a reviewing court must determine is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. Hollins, supra (citing Soraparu, supra).
. Mr. Barbain was sentenced to ten years at;hard labor for the sexual battery of T.B. Mr. Barbain received the maximum sentence for the sexual battery. La. R.S. 14:43.1(C)(1). The jurisprudence holds that the maximum sentence for sexual battery is not excessive even if the defendant has no prior felony convictions and has mental health issues. State v. Badeaux, 01-406 (La.App. 5 Cir. 9/25/01), 798 So.2d 234 (affirming the maximum sentence of a first time felony offender with psychiatric problems that must be,treated with anti-psychotic medications who was convicted of the sexual battery of a juvenile).
Mr. Barbain was also sentenced to life imprisonment at hard labor for the aggravated rape of T.B. Once convicted of aggravated rape, La. R.S. 14:42(D) provides a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The assertion that the mandatory Imlife sentence for aggravated rape is a violation of the prohibition against excessive punishment in the Louisiana Constitution has been rejected repeatedly. State v. Stokes, 36,212, p. 15 (La.App. 2 Cir. 9/18/02), 828 So.2d 631. The jurisprudence holds that a mandatory life sentence for aggravated rape is not excessive. See State v. Williams, 10-265 (La.App. 5 Civ. 11/9/10), 54 So.3d 98; State v. Layua-Martinez, 07-1255 (La.App. 3 Cir. 4/80/08), 981 So.2d 276; State v. Chandler, 41,063 (La.App. 2 Cir. 9/8/06), 939 So.2d 574; State v. Barnes, 01-0113 (La.App. 4 Cir. 11/7/01), 800 So.2d 1124.
Additionally, Mr. Barbain was sentenced to ten years at hard labor for the aggravated incest of T.B., which was below the maximum possible sentence.[24] The juris *789 prudence holds that a ten year sentence for aggravated incest is not excessive. See State v. Bolden, 04-1000 (La.App. 5 Cir. 3/1/05), 901 So.2d 445; State v. Humphries, 48,235 (La.App. 2 Cir. 9/25/13), 124 So.3d 1177; see also State v. S.D.G., 06-0174 (La.App. 3 Cir. 5/31/06), 931 So.2d 1244 (maximum sentence of twenty years for aggravated incest was not excessive.); Guerra, 36,347 at 22, 834 So.2d at 1218 (citing State v. Downs, 30,348 (La.App.2d Cir.1/21/98), 705 So.2d 1277) (holding that a maximum sentence is appropriate for an offender who sexually abuses his minor child or stepchild.).
Furthermore, Mr. Barbain contends that the district court judge erred by refusing to permit mitigating testimony from his mother. Gontrary to Mr. Barbara’ laacontention, the record of the sentencing heaving reflects that a family member of Mr. Barbain — -apparently his mother — requested to address the court, rather than offer mitigating testimony. After the district court judge sentenced Mr. Barbain for the sexual battery charge, defense counsel interrupted 'stating “Judge, he has a family member, Ms. Selma Barbain, here. She wanted to address the Court possibly before you sentence Mr. Barbain.” The judge responded “No, it’s not necessary, no.” The district court continued sentencing Mr. Barbain; defense counsel made no objections. Given defense counsel’s statement to the district court that a family member wanted to possibly address the court, the record does not indicate that the defense was requesting to call Selma Barbain as 'a witness, much less to give mitigating testimony.
In addition, Mr. Barbain contends that the district court judge erred by failing to give reasons for the sentences. Re-sentencing is unnecessary, however, when the record shows an adequate factual basis for the sentence imposed, even when there has not been full compliance with Article 894.1. See Jasper, supra.
The record reflects that the district court was aware of the elements that should be considered before imposing sentence-including the victim’s age, the defendant’s position of authority as a stepparent/and his history of mental health issues. Furthermore, the district' court judge, as the .trier of fact, weighed and determined the credibility of all the witnesses’ testimony. T.B.’s unrefuted testimony proved that Mr. Barbain began molesting her in 2005 when she was just eleven years old.’ From 2006 through 2011, T.B. endured many instances of sexual abuse and rape by Mr. Barbain. C.R. corroborated T.B.’s testimony by explaining that he walked in the bedroom while Mr. Barbain was raping her. D.R. also testified that she .witnessed Mr. Bar-bate on top of T.B. Moreover, at trial, Mr. Barbain' had four witnesses testify that they never witnessed any inappropriate or sexual behavior between Mr. Barbain and his children.
Considering the district court’s broad discretion and the facts and circumstances surrounding the sexual abuse and rape of T.B. from 2005 through . 2011, the sentences imposed on him neither are grossly out of .proportion to the seriousness of the crimes nor shock the sense of justice. Ac-eordingly, Mr. Barbara's sentences do not violate the prohibitions against excessive, cruel, or unusual punishment set forth in the United States and Louisiana Constitutions. Wé thus find this assignment, of error lacks merit.

*790
DECREE

For the foregoing reasons, we affirm the defendant’s convictions and sentence.
AFFIRMED
JENKINS, J., concurs and assigns reasons.

.As we do in every criminal ease, we have reviewed the record for errors patent and found one. This, error, however, does- not require any corrective action by this court. Specifically, the record shows that district court judge sentenced Mr. Barbain after It granted his motion for appeal. On December 8, 2014, the district court denied Mr. Bar-bain’s motion for new trial and granted his motion for appeal, On December 9, 2014, the district court sentenced Mr. Barbain, La, C.Cr.P. art. 916 provides that a-district court is divested of jurisdiction upon the granting of a defendant's .motion for an appeal. After it is divested of jurisdiction, the district court may take only certain, specified actions listed in La.C.Cr.P, art. 916. The imposition of sentence is not an exceptions listed, except an enhanced sentence pursuant to La. R.S. 15:529.1. It is well-settled that a defendant can appeal from a final conviction only when sentence has been imposed. State v. Chapman, 471 So.2d 716 (La. 1985). This court, however, has held that the appeal will not be dismissed on the grounds that the sentence was imposed after the motion for appeal was granted. State v. Brooks, 633 So.2d 816, 818 (La.App. 4th Cir.1994); State v, Martin, 483 So.2d 1223, 1225 (La.App. 4th Cir.1986) (holding that, despite the technical defect, "[djismissing .the appeal would simply result in a delay of the appellate process, and hinder defendant’s right to appeal.”); see also State v. Lampkin, 12-391, pp. 3-4 (La.App. 5 Cir. 5/16/13), 119 So.3d 158, 162, writ denied State ex rel. Lampkin v. State, 13-2303 (La.5/23/14), 140 So.3d 717- (finding- that although "the trial court lacked jurisdiction to impose sentence pursuant to La.G.Gr.P, art. 916 ... defendant’s motion for appeal should not be dismissed as this would only result in a delay of .defendant’s right to. appellate review.”). Therefore, we find that Mr, Barbain’s appeal should not bc(dismissed.

. The initials of the victim and victim’s family members will be used in order to protect the identity of the victim. See La. R.S. 46:1844(W). (barring public disclosure of the . names, addresses, -or identities of crime victints under the age of eighteen years and of all victims of sex offenses, and authorizing use of initials or abbreviations.)

. La. R.S. 14:78,1, entitled "Aggravated Incest,’’- was repealed by Acts 2014, Nos. 177 and 602. Effective June 12, 2014, "aggravated incest” was - redesignated "aggravated crimes against nature” and is now located at La, R.S. 14:89.1. "No change in the substantive proscriptions, of Louisiana Law were effected — only the placement of the conduct constituting the offense in the aggravated crime against nature offense- — and the repeal - of the offense of Aggravated Incest," Cheney C. Josepha and P. Raymond Lamoniea, 17 LA. CIV. L. TREATISE, CRIMINAL JURY INSTRUCTIONS § 10:151.50,- 2014 cmt. (3d ed.2014).

. On February 1, 2013, the district court granted Mr. Barbain’s counsel’s motion to withdraw. On the same date, the district ' court appointed the Orleans Parish Public Defenders Office ("OPPDO’’) to represent Mr. Barbain. Counsel’s alleged grounds for requesting to Withdraw mirrored those listed in his motion to continue. Mr. Barbain’s counsel claimed that Mr. Barbain was moved to St. Charles Parish Correctional facility, where counsel, due to his caseload and the scarcity of OPPDO resources, was only able to meet with Mr. Barbain in St. Charles Parish on two occasions. Counsel also averred that during his last meeting with Mr. Barbain on August 7, 2013, it became apparent to counsel that "Mr. Barbain would require additional evaluation ... concerning his ability to proceed with trial.” Counsel further requested to discuss this issue off the court record and ex parte. For these reasons, Mr. Barbain’s counsel thus claimed he was unable to adequately prepare for trial.

. The district court judge noted "[tjhis is a judge trial and the 412 has exceptions. It can be remote. It could be the prejudice outweighs the probative values. This is a judge trial.” The judge further stated "I’m going to let it in, but I still have to decide if I’m going 'to accept it as the trier of fact.” After trial commenced and during D.R.’s testimony, counsel engaged in á bench conference off the record. After the conference, the district court, over defense's objection, ruled as follows:
,.. based on the explanation given by the district attorney’s office regarding the previous ADA who was assigned to this case and previous defense attorney who was assigned to this case, the court finds that the advanced notice requirement of 412.2 was met.

.Dr. Blue testified that based on his January meeting with Mr. Barbain, and although Mr. Barbain was not taking any psychiatric medications, he believed Mr. Barbain "had a factual and a rational understand of the proceedings against him and an ability to consult with his attorney with a reasonable degree of rational understanding.” Dr. Blue, however, further testified that when he met with Mr. Barbain on the morning of the February 6, 2014, he noticed many changes in his behavior. Dr. Blue testified that Mr, Barbain seemed depressed, claimed to be hearing voices, and had difficulty organizing thoughts. Dr. Blue thus found that Mr. Barbain did not satisfy the Bennett criteria for competency.

. According to L.B.’s testimony, Mr. Ivery is neither T.B.’s biological father nor stepfather. *776 L.B., however, explained that he first met T.B. when she was two weeks old and that he has since raised her as his daughter.

. At trial, the State introduced the 911 call made by Mr. Ivery. Rogell Lewis, a 911, operator and record keeper, identified the July 29, 2013 recording of the call her office received and the Incident recall pertaining to the 931 call. Ms. Lewis verified that both'the 911 recording and incident recall bore the same item number G 44168“! 1.

, Mr. Barbain contends that the State strategically chose the dates.May 1, 2005 through July 31, 2005 — listed on the indictment to match the requirements of La. R.S. 14:43.1, Since Mr, Barbain became T.B.'s stepfather on July ‘31, 2005, the sexual battery had to occur before that date; otherwise, he would be charged under a different statute, such as aggravated incest. Mr. Barbain, however, provides no support for this contention.

. It is undisputed that T.B. is more than three years younger than Mr. Barbain.

. On cross examination, C.R. testified that he knew it was his sister on the bed because he identified her shirt.

. Their mother, L.B., testified that C.R. informed her of the abuse before T.B. reported it. When L.B. later confronted T.B. and C.R. about the incident, both denied that anything happened between T.B. and Mr, Barbain. However, after T.B. reported Mr, Barbain’s .abuse, she admitted to L.B. that what C.R. witnessed was true.

. At trial, the State introduced C.R.’s videotaped statement. Mr. Long identified the recording and testified that he interviewed C.R. in 2011.

. He stated that, while living.in the apartment on Haynes, he came out of the shower and saw Mr.' Barbain on top of. his sister. Although Mr. Barbain explained that he just body slammed T.B. as they were wrestling, C.R. described their movement as “like waves in the water.”

. L.B. testified that D.R. began living with them around 2001. According to L.B., Mr. Barbain occasionally slept in the room with her, or he would sleep on the living room sofa ■ with D.R.

. D.R. did not indicate who the father of her fetus was. She testified that at the time she conceived, she had unprotected sex with one male other than Mr. Barbain,

. The term "Trichomonas” is defined as a "species of long thin parasite which infests the intestines.” The term "Trichomonas vagi-nalis”, is defined as a "parasite which infests the vagina and causes an irritating discharge.” P.H. Collin, Dictionary of Medicine (2d ed.1998).

. In State v. Odenbaugh, 10-0268, pp. 8-9 (La.12/6/11), 82 So.3d 215; 228, the Louisiana Supreme Court also noted the following:
”[T]he appointment of a sanity commission is- not a perfunctory matter or a ministerial duty of the trial court, and is not guaranteed to every accused in every case.” Even the fact that' a defendant’s capacity to proceed is called into question by formal •motion does not, for that reason alone, require an order for a mental examination. LSA-C.Cr.P, Art. 643, Off’l Rev. Cmt. (a) ("The ordering of a mental examination as to the defendant’s present capacity to proceed rests in the sound discretion of the court. It is not enough that the defense has filed a motion urging the defense, but there must be sufficient evidence to raise a reasonable doubt as to such capacity.”). [State v.] Lott, [574 So.2d 417, 424 (La.App. 2 Cir. 1991)]; State v. Goins, 568 So.2d 23.1, 234 (La.App. 3 Cir.1990), writ denied, 573 So.2d 1117 (La.1991).

. See also Bridgewater, supra; State v. Ferguson, 15-0427, p. 6 (La.App. 1 Cir. 9/18/15), 181 So.3d 120,-, 2015 WL 5512996 (finding that the trial court did not abuse its discretion by not ordering a mental examination, because the record is devoid of any reasonable ground to doubt the defendant's mental capacity to proceed that existed prior to trial): State v. Wilt, 14-823, p, 10 (La.App. 5 Cir. 4/29/15), 170 So.3d 317, 325 (holding that although defendant argues that his actions during trial and police reports reflected his mental instability, the record does not show that defendant acted in an irrational fashion during court).

. In State v. Bennett, the Louisiana Supreme Court set forth the considerations necessary in determining whether a defendant is fully aware of the proceedings against him:
' The decision as to a defendant’s competency to stand trial should not turn solely upon Whether he suffers from a mental disease or defect, but must be made with specific reference to the nature of the charge, the complexity of the case and the gravity of the decisions with which he is faced. Appropriate considerations in determining whether the accused is fully aware of the nature of the. proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the' consequences of conviction.' Facts, to consider in determining -an accused’s .ability to assist in his defense include: whether he is able- to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and *785 examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary'to defense strategy, he is capable of testifying in his own defense; and to what extent, if any! his’mental condition is apt to deteriorate under the stress of trial, (citations omitted).

. Specifically, Mr. Barbain alleges he received ineffective assistance of counsel for the following reasons where counsel:
1) failed to file any pre-trial evidentiary motions;
2) failed to file subpoenas or collect medical records of Mr. Barbain’s prior mental health treatment and make, them available to the sanity commission;
3) waived his right to a jury trial;
4) filed an incomprehensible motion to withdraw that claims a conflict of interest;
5) admitted an inability to prepare or defend, particularly because of Mr. Barbara's inability to assist and the State’s belated revelation of ¡írady and other evidence;
6) prevented the defendant from exercising the right to testify;
7) filed a Motion for Appeal and Withdraw before sentencing; and
8) failed to object to sentencing or to file a Motion to Reconsider the Sentence.

. La.C.Cr.P. art. 881.1(E) provides, in pertinent part, as follows:
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

. Article 894.1 provides general guidelines and ensures some articulation of the factual basis for any given sentence. State v. Guerra, 36,347, p. 21 (La.App. 2 Cir. 12/18/02), 834 So.2d 1206, 1217 (stating that “[t]he trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of [La. C. Cr. P. art. 894.1].”). When the record shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Article 894.1. Jasper, infra (citing State v. Lanclos, 419 So.2d 475, *788 478 (La.1982); State v. Davis, 448 So.2d 645, 653 (La.1984)).

. Then enacted La. R.S. 14:78.1 stated that "[a] person convicted of aggravated incest shall be fined an amount not to exceed fifty thousand dollars, or imprisoned, with or *789 without hard labor, for a term not loss than five years nor more than twenty years, or both.”