STATE OF LOUISIANA      *      NO. 2022-KA-0635

VERSUS      *

MARK L. MAGEE      *      COURT OF APPEAL

     FOURTH CIRCUIT

     * 

     STATE OF LOUISIANA

     * * * * * * *

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 17-1715, DIVISION "B"
Honorable Michael D. Clement,
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *

(Court composed of Judge Sandra Cabrina Jenkins, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

**JENKINS, J., CONCURS IN THE RESULT**

Jeffrey L Smith
Autumn Towns
2735 Tulane Avenue
New Orleans, LA 70119


         COUNSEL FOR DEFENDANT/APPELLANT


Charles Joseph Ballay, District Attorney
Jason Napoli, Assistant District Attorney
DISTRICT ATTORNEY'S OFFICE, 25TH JDC,
PLAQUEMINES PARISH
333 F. Edward Hebert Blvd.
Building 201
Belle Chase, LA 70037


         COUNSEL FOR PLAINTIFF/APPELLEE


                         **CONVICTIONS AFFIRMED**
                   **REMANDED FOR RE-SENTENCING**
                                 **MARCH 20, 2023**

TGC

DN

Defendant/Appellant Mark Magee (hereinafter "Defendant"), seeks review of his convictions and sentences for one count of sexual battery of a juvenile, a violation of La. R.S. 14:43.1, and one count of cruelty to juveniles, a violation of La. R.S. 14:93(A)(1). For the reasons that follow, we affirm his convictions and remand this matter to the trial court for re-sentencing.

## PROCEDURAL HISTORY

Defendant was charged by bill of indictment with one count of sexual battery upon a juvenile and one count of cruelty to juveniles. Defendant was arraigned and pled not guilty to both counts. Following multiple motions to continue, a jury trial commenced on May 9, 2022. Three days later a unanimous jury found Defendant guilty as charged.

On July 6, 2022, Defendant filed a motion for new trial pursuant to La. C.Cr.P. art. 851. On September 7, 2022, the trial court denied his motion for new trial and conducted a sentence hearing. The trial court sentenced Defendant to serve ten years, without hard labor, on the count of sexual battery of a juvenile and ten years on the count of cruelty to a juvenile - each count is to run concurrently without eligibility for probation or parole.

1

Defendant filed a motion to reconsider his sentences which the trial court denied. This appeal followed.

## STATEMENT OF FACTS

R.L.,[1] the victim, was twenty-one years old at the time of the Defendant's trial. R.L. and her older brother (hereinafter "D.L."), began living with their paternal grandparents, Defendant and Angela Magee (hereinafter "Mrs. Magee"), following a custody dispute between D.L. and R.L.'s mother and father. D.L. and R.L. began living with Defendant and Mrs. Magee at the approximate ages of nine and six, respectively.

R.L. ran away from the home of her grandparents and was picked up in Plaquemines Parish by her mother (hereinafter "R.L.'s mother") who drove her to Texas. Mrs. Magee reported R.L. as a runaway on January 1, 2017. On that same day, R.L. sent an e-mail to Defendant and Mrs. Magee alleging sexual and physical abuse. Mrs. Magee forwarded the email to the Plaquemines Parish Officer investigating R.L.'s runaway.

Lieutenant Holly Hardin (hereinafter "Detective Hardin") - then a Sergeant and Detective with the Plaquemines Parish Sherriff's Office Special Victims Unit - was contacted by a deputy regarding R.L.'s allegations of sexual and physical abuse on January 1, 2017. Detective Hardin opened an investigation into the allegations three days later.

Upon Detective Hardin's request, R.L.'s mother returned R.L. to Louisiana. R.L. met with the Department of Children and Family Services (hereinafter "DCFS") to determine proper custody arrangements due to the allegations of

---

[1]  In accordance with La. R.S. 46:1844(W)(1)(a), to keep confidential the identities of the persons who were minors at the time of the offenses, initials have been used in place of names.

sexual and physical abuse within Defendant's home.[2] During her interview with DCFS, R.L. stated that she ran away from her grandparents because she could no longer endure the sexual and physical abuse from Defendant.

DCFS held a meeting with Defendant, Mrs. Magee, R.L., and Detective Hardin wherein the Defendant told R.L. the following: that he would send her to Brother Martin High School[3] so she could be with all of the boys she pleased; that she should kill herself; and that she was going to be a prostitute. R.L. was placed in foster care and removed from Defendant and Mrs. Magee's custody.

On January 20, 2017, R.L. attended a forensic interview at the Children's Advocacy Center (hereinafter "Advocacy Center") wherein she recounted numerous instances of sexual and physical abuse by the Defendant.[4] Dr. Neha Mehta (hereinafter "Dr. Mehta"), a certified child abuse expert with the Audrey Hepburn Care Center, also interviewed R.L.

At trial the following witnesses testified: Detective Hardin, Dr. Mehta, D.L, R.L., R.L.'s mother, R.L.'s younger brother (hereinafter "C.L."), R.L.'s second younger brother (hereinafter "K.L"), Mrs. Magee, and R.L.'s fiancé.

During the State of Louisiana's (hereinafter "the State") case in chief, Detective Hardin testified that she interviewed both the Defendant and Mrs. Magee as part of her investigation. Detective Hardin noted that R.L. met with DCFS upon

---

[2] When R.L.'s mother returned R.L. to Plaquemines Parish, Defendant and Mrs. Magee still had legal custody of R.L. who was still considered a runaway.

[3] Brother Martin High School is a private, all boys Catholic school located in New Orleans, Louisiana.

[4] R.L.'s interview with the Advocacy Center was both audibly and visually recorded. R.L.'s Advocacy Center interview was submitted as an exhibit at Defendant's trial.

her request and that she was present during DCFS' joint interview of Defendant, Mrs. Magee, and R.L.

D.L. testified that he lived with Defendant and Mrs. Magee for a majority of his life. D.L. denied ever witnessing Defendant sexually, physically, or emotionally abuse R.L. or any of his siblings. D.L. maintained that their mother was forcing R.L. to make up the allegations against the Defendant and that R.L. enjoyed the attention of Defendant's trial.

Dr. Mehta, qualified as an expert in the field of child abuse, interviewed R.L. at the Audrey Hepburn Care Center. Dr. Mehta determined that R.L was a victim of child sexual abuse, child physical abuse, and child emotional abuse. She testified that R.L. articulated the sexual abuse by the Defendant. Nothing during the interview suggested to Dr. Mehta that R.L had been untruthful when she provided an account for the sexual, physical, and emotional abuse by Defendant.

R.L. testified that Defendant began sexually abusing her at the approximate age of thirteen. R.L. described the incidents of sexual and physical abuse by Defendant in detail. She recalled that she decided to run away from her grandparents' home following a hunting trip in Alabama. When asked about her father, R.L. testified that he threatened to kill her, her child, and her fiancé. She stated that she feared for her life and believed he would kill her if he got the chance.

C.L. testified he began living with Defendant and Mrs. Magee when he was approximately four years old. He testified that he never witnessed R.L. being sexually or physically abused by Defendant nor did he recall either of his grandparents calling R.L. derogatory names. K.L. also testified at trial and

maintained that he was never physically abused by his grandparents and could not recall witnessing R.L. being sexually or physically abused by the Defendant.

Mrs. Magee, testified that she had been married to Defendant for over forty years. She claimed that R.L. and R.L.'s mother were lying about her husband's conduct and denied ever abusing R.L. or any of R.L's younger brothers. She also testified that she knew R.L. to be a girl who enjoyed the attention of males, was often disrespectful, and dramatic.

During the State's rebuttal, Detective Hardin and R.L.'s fiancé testified as to testimony elicited from D.L., regarding their father.

## ERRORS PATENT

Our review of the record reveals one error patent. *See* La. C.Cr.P. art. 920. When a defendant is convicted of a felony and a motion for new trial is filed, the trial court shall not impose a sentence until at least twenty-four hours after the motion is overruled (hereinafter "the 24-Hour Delay"). *See* La. C.Cr.P. art. 873. In the matter *sub judice*, the trial court denied Defendant's motion for new trial and sentenced him on the same day without an express waiver of the 24-Hour Delay. We find that the trial court's error of failing to observe the 24-Hour Delay was not a harmless error. *See State v. Kisack*, 2016-0797, pp. 7-8 (La. 10/18/17), 236 So.3d 1201, 1205-06 (holding that the trial court's failure to observe the sentencing delay required by La. C.Cr.P. art. 873 is not harmless error). Accordingly, the case is remanded to the trial court solely for the purpose of re-sentencing Defendant.

## DISCUSSION

Defendant asserts six assignments of error: (1) the trial court erred in denying his motion for new trial as the State's evidence was insufficient to obtain a conviction; (2) the trial court erred in allowing the State's rebuttal evidence which caused prejudice to Defendant; (3) the trial court erred in imposing the maximum sentence on both of Defendant's convictions; (4) the trial court erred in denying Defendant's motion for mistrial regarding statements made about Defendant's post-*Miranda* silence; (5) the trial court erred in failing to suppress evidence not turned over by the State; (6) Defendant was unfairly prejudiced by the ineffectiveness of his trial counsel. We address each in turn.

### *Assignment of Error No. 1: Insufficiency of Evidence*

In his first assignment of error, Defendant contends that the evidence presented at trial was insufficient to support his convictions and maintains that the State failed to establish the essential age elements within the crimes. He further asserts that the testimony of the State's witnesses failed to prove beyond a reasonable doubt that he committed either crime for which he was charged.

"The standard for determining an insufficiency of evidence claim is well settled." *State v. Campbell*, 2015-0017, p. 7 (La.App. 4 Cir. 6/24/15), 171 So. 3d 1176, 1182. Claims for insufficiency of evidence must be viewed in a light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319 , 99 S.Ct 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Wilson*, 2022-0346, p. 4 (La.App. 4 Cir. 12/9/22), 353 So.3d 389, 393. An appellate court is tasked with determining if the evidence is sufficient to convince a rational trier of fact that all elements of a crime have been proven beyond a reasonable doubt. *Id*.

"This Court must review 'the record as a whole since that is what a rational trier of fact would do.'" *Wilson*, 2022-0346, p. 4, 353 So.3d at 393 (citation

omitted). This Court is not tasked with assessing the credibility of witnesses or re-weighing evidence. *Campbell*, 2015-0017, p. 8, 171 So.3d at 1182 (citations omitted). The credibility determination of the trier of fact will not be disturbed unless clearly contrary to the evidence. *Id*. The testimony of a single witness, if believed by the trier of fact, is sufficient to support a factual conclusion. *Id*.

In the matter *sub judice*, Defendant contends that the State failed to prove the charges of sexual battery upon a juvenile and cruelty to juveniles. We separately address each conviction.

*Sexual Battery*

The jury found Defendant guilty of sexual battery upon a juvenile, a violation of La. R.S. 14:43.1. Defendant avers that the evidence presented at trial was insufficient to support his conviction and alleges that La. R.S. 14:43.1 contains an age component which the State failed to prove. He also contends that the testimony of R.L. is inconsistent with her siblings and his wife's testimony, all of whom lived in the same house as R.L. when the alleged sexual battery took place. He maintains that due to the lack of forensic and corroborative evidence, his conviction cannot stand on inconsistent testimony alone.

The State contends that Defendant committed sexual battery upon R.L. from January 1, 2013 to December 31, 2016. From August 2011 to July 2015, La. R.S. 14:43.1 defined sexual battery, in pertinent part, as follows:

> the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, when any of the following occur:
> (1) [t]he offender acts without the consent of the victim.

7

The current version of La. R.S 14:43.1, effective August 1, 2015 provides, in pertinent part:

> Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when any of the following occur…the offender acts without the consent of the victim [or] [t]he victim has not yet attained fifteen years of age and is at least three years younger than the offender.

La. R.S. 14:43.1(A)(1) and (2).

To support a conviction of sexual battery, the State is required to prove the following beyond a reasonable doubt: (1) between January 1, 2013 to December 31, 2016, R.L. was under fifteen years old at the time of the offense; (2) R.L. was at least three years younger than Defendant; and (3) Defendant touched R.L's genitals, directly or through clothing, using any instrumentality or any part of his body.

R.L. testified that she lived with her grandparents, Defendant and Mrs. Magee, following a custody dispute between her mother and father. R.L. stated that Defendant first began sexually abusing her at the age of thirteen by touching her breasts, buttocks, and vaginal area over her clothes. She recalled that she feared Defendant was going to rape her when he rubbed her thigh and told her he could have sex with her without anyone knowing. R.L. also testified that she would lock the bathroom door when she showered as Defendant would require her to inform him when she showered so he could watch her.

The State introduced an e-mail from R.L. to Defendant and Mrs. Magee in which R.L. maintains that she was tired of the physical and sexual abuse within their home.

R.L's three brothers testified that they never witnessed any inappropriate sexual touching between Defendant and R.L. D.L. testified that R.L. and her mother were lying about the allegations against Defendant. All of R.L.'s brothers described Defendant as a "good parent."

While we recognize that conflicting testimony exists, we find that R.L.'s testimony was sufficient to establish the crime of sexual battery of a juvenile. "In cases involving sexual offenses, the testimony of the victim alone may be sufficient to establish the elements of the offense, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense." *State v. Barbain*, 2015-0404, p. 10 (La.App. 4 Cir. 11/4/15), 179 So.3d 770, 778. Further, it is not the role of this Court to assess the credibility of witnesses or re-weigh the evidence submitted at trial. *See State v. Brown*, 2016-0965, p. 28 (La.App. 4 Cir. 5/3/17), 219 So.3d 518, 536 (concluding that "[t]he credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact.") (citation omitted).

In addressing the Defendant's argument as to the age component set forth in La. R.S. 14:43.1, it can be inferred that R.L. was at least thirteen when Defendant first began touching her in a sexual manner. R.L. specifically testified that the abuse began around the age of thirteen. Further, in accordance with La. R.S. 14:43.1, Defendant is over the age of seventeen as he was tried as an adult, his wife testified that she had been married to him for over forty years, and that they were both the grandparents of R.L. and her siblings.

A jury of six heard the conflicting testimony of the witnesses and found Defendant to be guilty of sexual abuse battery of a victim under the age of thirteen. The testimony of R.L., Detective Hardin, and Dr. Mehta support this finding. This

Court has concluded that a jury may infer the age of a defendant when no direct evidence of the defendant's age is presented. *See State v. Johnson*, 2011-1213, p.11 (La.App. 4 Cir. 2/7/13), 109 So.3d 994, 1001. Moreover, a defendant's age may be inferred based on their appearance in court and by the fact they are being tried as an adult. *See State v. Lewis*, 97-1549, p. 6 (La.App. 4 Cir. 2/3/99), 727 So.2d 1274, 1277.

*Cruelty to Juveniles*

The jury also found Defendant guilty of cruelty to juveniles, a violation of La. R.S. 14:93 (A)(1), which provides, "[t]he intentional or criminally negligent mistreatment or neglect by anyone seventeen years of age or older of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child."

Defendant again avers that the crime defined within La. R.S. 14:93 (A)(1) contains an age component that the State failed to prove. He submits that the testimony presented at trial is inconsistent and failed to prove, beyond a reasonable doubt, that he committed cruelty to R.L.

R.L. testified that Defendant, would physically abuse her by shoving her off of chairs forcing her head to hit hard surfaces, resulting in bruises. She further testified that he once hit her head with the scope of a gun resulting in bruises. R.L. testified that Defendant would pinch her sides if she denied his sexual advances. Dr. Mehta corroborated this testimony when she concluded R.L. was the victim of physical abuse.

R.L. also testified that Defendant abused her brothers and cited to a letter, written by her brother D.L., alleging abuse by Defendant. D.L. admitted to writing the letter, but maintained that his mother forced him to fabricate the allegations

10

against Defendant. D.L. further testified that R.L. and their mother, were fabricating the allegations against Defendant. C.L. and K.L. stated that they were never physically abused by Defendant and testified that R.L. was treated like a "princess" growing up.

R.L.'s testimony coupled with Dr. Mehta's expert opinion that R.L. was the victim of physical abuse supports the jury's finding that Defendant committed the crime of cruelty to juveniles. D.L., C.L., and K.L.'s testimony that they were never abused or had first-hand knowledge that Defendant physically abused R.L. requires a determination of the credibility of witnesses and the weighing of evidence – a sole function of the trier of the fact. Contrary to Defendant's contentions, there was sufficient evidence to support his conviction of cruelty to juveniles as the jury found R.L. and Dr. Mehta to be credible witnesses. *See Wilson*, 2022-0346, p. 6, 353 So.3d at 394 (holding that credibility determinations are within the sole discretion of the trier of fact and will not be disturbed upon review) (citation omitted).

Further, Defendant was tried as an adult, not a juvenile, and R.L. testified that the physical abuse occurred around the same time as the sexual abuse, i.e. at the approximate age of thirteen. It was also determined that Mrs. Magee was the wife of Defendant for over forty years and that they are the grandparents of R.L. and her three brothers. *See Lewis*, 97-1549, p. 6, 727 So.2d at 1277 (holding that a trier of fact can infer the age of the accused based upon physical appearance and the fact that they are being tried as an adult).

Thus, there was sufficient evidence for a six person jury to convict Defendant of sexual battery and cruelty to juveniles. This assignment or error lacks merit.

### *Assignment of Error No. 2: Rebuttal Evidence*

Defendant's second assignment of error contends that the trial court impermissibly allowed the State to introduce, as rebuttal evidence, Detective Hardin and R.L's fiancé's testimony regarding R.L.'s father. Defendant maintains that the testimony regarding his stepson, R.L.'s father, improperly prejudiced him before the jury. The State contends that the testimony of R.L.'s fiancé was proper as it was put forth to disprove facts introduced by the defense.

The general rules governing rebuttal arguments provides that a rebuttal argument "shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." La. C.Cr.P. art. 774. The state's rebuttal shall only pertain to answering the argument of the defendant and that no argument shall appeal to prejudice. La. C.Cr.P. art. 774. The state, in a criminal prosecution, has the right to rebut evidence adduced by their opponents. La. C.E. art. 611(E).

For evidence to be deemed admissible, it must be analyzed by the trial court in accordance with La. C.E. art. 403 which provides that "[a]lthough relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, of misleading the jury, or by considerations of undue delay, or waste of time." A trial court's determination of relevancy and the admissibility of evidence, will not be disturbed on appeal absent a clear abuse of discretion. *Campbell*, 2015-0017, p. 24, 171 So.3d at 1190.

During the State's case in chief, R.L. testified that her father sent her death threats upon learning about her allegations against Defendant and his mother. She further claimed that her father's threats made her fear for her life and believed he would kill her. C.L. and K.L. testified for Defendant and maintained that their

father often says things he does not mean. Mrs. Magee also testified for the defense and claimed her son has substance abuse issues, suffers from bipolar disorder, and has never witnessed R.L.'s father carry out any of his threats. During the State's rebuttal, R.L.'s fiancé corroborated R.L.'s testimony and testified that he also received death threats from R.L.'s father.

The trial testimony and evidence supports R.L. and her fiancé's testimony regarding the death threats. Further, the defense elicited testimony from Mrs. Magee and R.L.'s three brothers in an attempt to discredit R.L.'s testimony. Thus, the State introduced rebuttal testimony from R.L.'s fiancé to refute Defendant's allegations that R.L.'s father often fails to carry out his many threats. There is nothing within the record to suggest the Defendant's contention that the State's rebuttal argument was improperly introduced. Pursuant to La. C.E. art. 611(D) the State is permitted to rebut evidence set forth by the defense.

Additionally, we conclude that even if the trial court erred in admitting the evidence, the error is subject to the harmless error analysis. *See State v. Session*, 2021-0118, p. 6 (La.App. 4 Cir. 12/14/21), 332 So.3d 729, 737 (citing *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). "In the harmless error analysis, '[t]he inquiry…is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.'" *Id*. (quoting *State v. Trung Le*, 2017-0164, p.20 (La.App. 4 Cir. 4/11/18), 243 So.3d 637, 657-58)).

The State set forth a substantial case against Defendant which included the testimony of three fact witnesses and Dr. Mehta's expert opinion which corroborated R.L.'s testimony. Considering the evidence and testimony in this

matter, we conclude that the guilty verdict rendered by the jury cannot be attributed to an error by the trial court in admitting the rebuttal testimony of R.L.'s fiancé. We find that the trial court did not err in overruling Defendant's objection to the State's rebuttal witness. This assignment of error lacks merit.

### *Assignment of Error No. 3: Excessive Sentences*

In his third assignment of error, Defendant avers that the trial court erred in enforcing the maximum ten-year sentence on both convictions. As previously noted, the trial court committed error when it denied Defendant's motion for new trial and sentenced him on the same day. *See* La. C.Cr.P. art. 873. Thus, this matter is remanded for the sole purpose of re-sentencing. As such, we pretermit the issue of Defendant's excessive sentences.

### *Assignment of Error No. 4: Motion for Mistrial*

In his fourth assignment of error, Defendant argues that the trial court erred in denying his motion for mistrial. Specifically, Defendant maintains that Detective Hardin's testimony pertaining to his post-*Miranda* silence improperly prejudiced him before the jury.

If the state or witness makes a remark that is prejudicial to the defendant, the trial court "shall promptly admonish the jury to disregard the remark or comment made during trial." La. C.Cr.P. art. 771. A defendant may motion for mistrial in which the court may grant if it determined that "an admonition is not sufficient to assure the defendant a fair trial." *Id.* "The decision to grant or deny a mistrial for prejudicial conduct rests within the trial court's discretion and will not be disturbed absent an abuse of discretion." *State v. Irons*, 2022-0515, p. 6 (La.App. 4 Cir. 7/28/22), 346 So.3d 299, 303.

14

Defense counsel elicited questions regarding Detective Hardin's investigation of Defendant, maintaining that he was cooperative at all times during his interview with Detective Hardin. On re-direct, the State questioned Detective Hardin regarding her interview of Defendant after his arrest in which she testified that he invoked his Fifth Amendment right. This is the only reference to Defendant's post-*Miranda* silence.

There is no indication that the State or Detective Hardin provided information regarding Defendant's post-*Miranda* silence for impeachment purposes. It is clear from the record that Detective Hardin cited to Defendant's post-*Miranda* silence as a response to Defendant's questions pertaining to her interview of Defendant following his arrest. Further, the trial testimony reveals the discussion of Defendant's post-*Miranda* silence was brief when compared to the trial testimony of the State's three fact witnesses and Dr. Mehta which resulted in a guilty verdict from the jury.

A brief reference to a defendant's post-*Miranda* silence does not mandate a mistrial or a reversal when the following circumstances are present: the trial as a whole was fairly conducted; the proof of guilt is strong; and the prosecution made no use of the silence for impeachment purposes. *See State v. Hollins*, 2011-1435, p. 29 (La.App. 4 Cir. 8/29/13), 123 So.3d 840, 861. The trial court did not abuse its discretion in denying Defendant's motion for mistrial. Accordingly, this assignment of error lacks merit.

### *Assignment of Error No. 5: Discovery Violation*

In his fifth assignment of error, Defendant contends that the trial court erred in allowing the State to submit an Instagram conversation between D.L. and his mother (hereinafter "State's Exhibit 7"). He further maintains that the State

15

violated discovery rules by failing to provide the Instagram conversation during pre-trial discovery.[5] Conversely, the State avers that it properly submitted the exhibit as it was intended to impeach D.L.'s testimony.

Louisiana's Code of Evidence provides that "extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness." La. C.E. art. 607(D)(2). A trial court is tasked with determining if extrinsic evidence and its "probative value … is substantially outweighed … by unfair prejudice." *Id.*

Our Supreme Court has noted that a party can impeach its own witness. *See State v. Cousins,* 96-2973, pp. 10-11, 710 So.2d 1065, 1070-71. In performing the weighing process within La. C.E. art. 607(D)(2), a court must consider and weigh the relevancy of the prior statement with the credibility of the in-court statement and the motivation for impeachment. *Cousins*, 96-2973, p.11, 710 So.2d at 1071. "The court should further consider the prejudicial effect of the statement if used improperly as substantive evidence, and the effectiveness of a limiting instruction in avoiding improper use of the statement." *Id.*

D.L. testified for the State and maintained that R.L. was fabricating the allegations made against the Defendant. D.L. claimed that he did not have a relationship with his mother and maintained he had not spoken to his mother since 2010. The State submitted State's Exhibit 7, evidencing Instagram messages, from 2017, wherein D.L. stated he missed his mother and wished to live with her. We find that the Instagram messages between D.L. and his mother indicate that he made inconsistent statements regarding his relationship with his mother.

---

[5] Pursuant to La. C.Cr.P. art. 716(D), Defendant submits that the State should have provided the Instagram conversation during discovery as it was a "written or recorded statement" of a "witness the state intend[ed] to call in its case in chief at trial."

Pursuant to La. C.E. art. 607(D)(2) the Instagram messages were extrinsic evidence presented to impeach the prior inconsistent statements of D.L. with no prejudicial effect to Defendant. D.L.'s testimony revealed hostility towards his mother as he maintained that his mother and R.L. were fabricating the allegations against Defendant. State's Exhibit 7 was submitted to refute D.L.'s hostile testimony regarding his mother and R.L., indicating its probative value was to show the jury numerous inconsistent statements made by D.L. during trial. *See State v. Edwards*, 419 So.2d 881, 895 (La. 1982) (holding the probative value of an exhibit must outweigh any prejudicial effect upon the jury and must be relevant to a material at trial). Accordingly, we find that the trial court did not err in allowing the introduction of State's Exhibit 7. This assignment of error lacks merit.

### *Assignment of Error No. 6: Ineffective Assistance of Counsel*

Defendant's final assignment of error submits that trial counsel rendered ineffective assistance of counsel by failing to object to the State's impermissible leading of R.L.'s testimony during trial. By this assignment of error, Defendant further maintains this was prejudicial and improper. Conversely, the State contends that Defendant has failed to establish a proper claim of ineffective assistance of counsel and has not demonstrated that he was deprived of a fair trial.

A defendant's ineffective assistance of counsel claim is properly raised by an application for writ of habeas corpus in the trial court. *See State v. Deloch*, 380 So.2d 67, 68 (La. 1980). However, our Supreme Court has noted that if the issue of ineffective assistance of counsel is raised by an assignment of error on appeal and the record indicates that the issue need be decided, the issue will be considered in the interest of judicial economy. *State v. Seiss*, 428 So.2d 444, 449 (La. 1983).

In accordance with the standard set forth in *Strickland v. Washington*, to support a claim for ineffective assistance of counsel a defendant must (1) show that counsel's representation was deficient and (2) the aforementioned deficiency prejudiced the defendant. 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Boyd*, 2014-0408, p. 7, 318 So.3d at 402 (citation omitted). "In deciding an ineffective assistance of counsel claim, a court is not required to address both components if the defendant makes an insufficient evidentiary showing on one component." State v. *Boyd,* 2014-0408, p.7 (La.App. 4 Cir. 7/25/18), 318 So.3d 397, 402 (citation omitted).

The defendant must first "show that counsel made errors so serious that he was not operating as the type of counsel guaranteed by the Sixth Amendment to the United States Constitution." *Boyd*, 2014-0408, p. 7, 318 So.3d at 402 (citation omitted). Second, the defendant must prove that the counsel's error was so severe that that it deprived the defendant of a fair trial. *Id*. Thus, in the matter *sub judice*, Defendant must prove that but for counsel's deficient performance, there is a reasonable probability that the result of his trial and subsequent conviction would be different. *Boyd*, 2014-0408, p. 8, 318 So.3d at 403. Further, absent an abuse of discretion a conviction will not be reversed because of leading questions. *See State v. Felde*, 422 So.2d 370, 385 (La. 1982).

Defendant maintains that the State's improper leading of R.L. upon re-direct was a prosecutorial error that diminishes the reliability of the jury's verdict. During the State's re-direct of R.L., Defendant's trial counsel objected to leading questions and the trial court instructed the State to "get to the point." Other instances in which Defendant's trial counsel objected to leading questions, the objections were sustained. There is no evidence within this record to indicate that

there was a prosecutorial error that diminished the reliability of the jury's verdict. *See Felde*, 422 So.2d 379, 385 (holding that "[l]eading questions are not the type of prosecutorial error which diminish the reliability of jury's verdict.").

Moreover, Defendant has failed to prove that but for his trial counsel's alleged "severe" failure in objecting to the leading questions - for one of five of the State's witness - a different verdict would have resulted. We therefore find the guilty verdict is not attributed to Defendant's trial counsel failing to object to the State's leading questions of R.L. Thus, finding no clear abuse of discretion that prejudiced Defendant's rights at trial, this assignment or error lacks merit.

## DECREE

For the foregoing reasons we affirm Defendant's convictions and remand this matter to the trial court for the sole purpose of re-sentencing Defendant.