STATE OF LOUISIANA      *      NO. 2023-KA-0748

VERSUS      *

        COURT OF APPEAL

GLADUE JOSEPH ISTRE      *

        FOURTH CIRCUIT

     *

        STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 19-01438, DIVISION "B"
Honorable Jeanne Nunez Juneau
* * * * * *
**Judge Nakisha Ervin-Knott**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Karen K. Herman, Judge Nakisha Ervin-Knott)

Liz Murrill
LOUISIANA ATTORNEY GENERAL
J. Taylor Gray
Assistant Attorney General
J. Bryant Clark, Jr.
Assistant Attorney General
LOUISIANA DEPARTMENT OF JUSTICE
PO Box 94005
Baton Rouge, LA 70804


       COUNSEL FOR STATE OF LOUISIANA/APPELLEE


Sherry Watters
LOUISIANA APPELLATE PROJECT
P. O. Box 58769
New Orleans, LA 70158

       COUNSEL FOR DEFENDANT/APPELLANT

       **CONVICTION AFFIRMED;
SENTENCE REMANDED**

       **October 24, 2024**

NEK

RLB

KKH

Defendant, Gladue Joseph Istre, appeals his conviction of second degree rape and sentence of fifteen years at hard labor. For the reasons that follow, we affirm the Defendant's conviction and remand his sentence for clarification as to what portion of the sentence is to be served without the benefit of parole, probation, and suspension.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

On August 2, 2019, the State charged Defendant with two counts of first degree rape in violation of La. R.S. 14:42. Count 1 alleged that Defendant had committed rape against R.B. on or about November 24, 2018, and Count 2 alleged that Defendant had committed rape against B.B. on or about December 17, 2018.[1] On June 12, 2023, the State amended both charges to second degree rape in violation of La. R.S. 14:42.1. Defendant pled not guilty to both charges, and the case went to trial. A jury trial commenced on June 13, 2023 and concluded on June 20, 2023.

At trial, the State introduced the testimony of Detective Brad Alfonso, the lead investigator on Defendant's case. Det. Alfonso testified that on February 8, 2019, he was assigned to investigate the rape allegations made against Defendant. In connection with his investigation, he spoke with R.B., B.B., and D.R.[2] After

---

[1] In accordance with La. R.S. 46:1844(W)(1)(a), we will refer to Defendant's victims by their initials to protect their identity.

speaking with the women, Det. Alfonso issued an arrest warrant for the Defendant out of an abundance of caution. Thereafter, Det. Alfonso conducted two interviews with the Defendant, both of which were video recorded and played before the jury. In these interviews, Defendant claimed the women concocted false rape allegations against him in a conspiracy to get revenge. Defendant admitted to having sexual intercourse with the women but insisted that all intercourse had been consensual. Det. Alfonso performed a forensic examination of the victims' and Defendant's phones. When questioned about the examinations, Det. Alfonso testified that there appeared to be missing information in the Defendant's phone. However, he did confirm that none of the text messages between the victims reflected discussions about bringing forth false rape allegations.

Next, the jury heard from M.M.[3], Defendant's former ex-wife, who testified that she had a brief, 6-week marriage with the Defendant. During the marriage, Defendant placed her job in peril by contacting her during work, sold her vehicle without her consent, and did not pay workers he had hired to perform improvements on her property. Their marriage ended after the Defendant physically assaulted M.M. and raped her. She applied for and received a protective order against the Defendant, and the two were divorced shortly thereafter.

B.B., the victim named in Count 2, testified that Defendant was close with her grandparents and had gotten her a job in law enforcement. She shared a residence with Defendant as a roommate for a brief period of time. Although she

---

[2] Although D.R. is not one of the victims named in this case, she has alleged that Defendant sexually assaulted her and has pressed charges outside of St. Bernard Parish.

[3] Although M.M. is not a named victim in this case, she filed for a domestic abuse protective order in another jurisdiction. Therefore, we will refer to her by her initials.

identifies as a lesbian, which Defendant knew, he often sent her text messages that were sexual in nature. These text messages were shown to the jury. B.B testified that she engaged in these text messages as a means to get the Defendant to leave her alone and described the communication as "locker room talk." She described one incident wherein the Defendant had placed her hand on his penis without her consent, but she continued to stay with him because she did not believe that he would do it again. However, she testified that on December 17, 2018, Defendant forcibly raped her.

Next, the jury heard from Nurse Heidi Martin, a certified Sexual Assault Nurse Examiner ("SANE") and the coordinator of the SANE program at University Medical Center. Nurse Martin testified that sexual abuse victims often do not immediately report the abuse after it occurs. She explained that there are many reasons victims wait to disclose sexual abuse, such as embarrassment or a close relationship to their abuser. She also testified that it is not uncommon for victims to continue to have a sexual relationship with their abuser after a rape occurs.

D.R. testified that she met the Defendant over a dating app in January 2019. She had gone on two dates with the Defendant. On the night of the second date, she agreed to stay at the Defendant's residence because she lived out of town. She woke up in the middle of the night to the Defendant rubbing his penis with her hand. She attempted to flee the scene, but Defendant prevented her from leaving by taking her car keys. He refused to return the keys, even when she held him at gunpoint. D.R. spent the rest of the night locked in her room with her gun pointed at the door.

Finally, the jury heard from R.B., the victim named in Count 1, who testified that she first met Defendant in May 2018. The pair were engaged in August 2018, although the engagement was called off the next month. Despite this, the pair remained in a romantic relationship until January 2019, when R.B. found out that Defendant had been sleeping with other women.

R.B. testified that she had been anally raped when she was young. She did not report this incident to the police, but she confided in Defendant about the encounter. After learning about this, Defendant began to ask R.B. for anal sex. She consensually engaged in anal sex once with the Defendant, but she did not like the experience and made this known to Defendant. On November 24, 2018, she went out with the Defendant. Although she did not drink, she testified that Defendant drank heavily. When they returned to the Defendant's house, they engaged in sexual intercourse. While the encounter was initially consensual, she withdrew that consent when the Defendant attempted to penetrate her anally. Even though she told him multiple times to stop, he did not. He held her down, and she was unable to get up or leave. She testified that she experienced rectal bleeding after the encounter.

Text messages between the two were offered into evidence for the jury to see. R.B. texted Defendant he had assaulted her, which he denied. R.B. testified that she did continue to see the Defendant after the incident because she believed he had a drinking problem and she had established boundaries for their relationship going forward. However, when R.B. later learned about the other women Defendant had been seeing, she started to realize that his sexually assaultive behavior was not just a result of a drinking problem.

4

At the conclusion of trial, the jury found Defendant guilty on Count 1 of committing second degree rape against R.B. and not guilty on Count 2 of committing second degree rape against B.B. On August 7, 2023, the trial court held a sentencing hearing and sentenced Defendant to fifteen years imprisonment at hard labor. This appeal followed.

## ASSIGNMENTS OF ERROR

Defendant presents the following assignments of error in his brief:

(1) The State failed to prove the alleged crime of second-degree rape where there was reasonable doubt that the act was not consensual; consent was withdrawn only after the fact.

(2) The trial court erred in allowing expert testimony on "delayed disclosure" where the complainant was an adult at the time of the alleged act and at the time of the disclosure three months later.

(3) The trial court erred in allowing the admission of prejudicial other crimes evidence and in failing to give a limiting instruction as to the use of the evidence.

(4) The district court abused its discretion in imposing a fifteen year sentence on a first offender under the particular circumstances of this offense and failing to provide reasons for the sentence. The sentence is constitutionally excessive

## ERRORS PATENT

Appellate courts have a duty to review the appellate record for any errors patent.[4] La. C.Cr.P. art. 920; *see also State v. Taylor*, 2018-1039, pp. 2-3 (La. App. 4 Cir. 6/17/20), 302 So. 3d 145, 146. A review of the record reveals one error patent, which is encompassed in assignment of error four. We will discuss this error in conjunction with assignment of error four.

## DISCUSSION

---

[4] An error patent is one "that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La. C.Cr.P. art. 920(2).

***Assignment of Error #1: Whether the evidence was sufficient to convict Defendant of second degree rape***

We first analyze whether the State presented sufficient evidence at trial to support Defendant's conviction of second degree rape.

When determining whether there is sufficient evidence to support a conviction, the appellate court must view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Macon*, 2006-481 (La. 6/01/07), 957 So. 2d 1280, 1285 (other citations omitted). The appellate court should not assess the credibility of witness testimony or reweigh the evidence presented before the trier of fact. *Id.*, 2006-481, 957 So. 2d at 1286. The appellate court cannot substitute its own view of the evidence for the determinations made by the trier of fact, and it may only disturb the trier of fact's decision "to the extent necessary to guarantee due process of law." *State v. Pigford*, 2005-0477, p. 6 (La. 2/22/06), 922 So. 2d 517, 521 (other citations omitted). A single witness' testimony alone may be enough to support a conviction. *State v. Barbain*, 2015-0404, p. 8 (La. App. 4 Cir. 11/04/15), 179 So. 3d 770, 777; *State v. Williams*, 49,249, p. 7 (La. App. 2 Cir. 10/01/14), 149 So. 3d 462, 468 ("The testimony of a sexual assault victim alone is sufficient to convict a defendant."). Any conflict or contradiction within the testimony or with the physical evidence goes to the weight of the evidence—not sufficiency—and remains within the trier of fact's discretion. *See Barbain*, 2015-0404, p. 8, 179 So. 3d at 777.

The jury found the Defendant guilty of committing second degree rape on R.B. When Defendant committed the crime in 2018, La. R.S. 14:42.1(A) defined second degree rape as follows:

> Second degree rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

To support a conviction under this statute, the evidence must show "the defendant committed an act of . . . sexual intercourse with the victim without her lawful consent, and the victim was 'prevented from resisting . . . by force or threats of physical violence.'" *State v. McDonough*, 2022-0628, p. 24 (La. App. 4 Cir. 10/27/23), 376 So. 3d 1003, 1021 (quoting *State v. McFarlin*, 54,754, p. 4 (La. App. 2 Cir. 1/25/23), 354 So. 3d 888, 891).

At trial, R.B. testified that, although she had initially consented to having vaginal intercourse with Defendant, she did not consent to having anal sex. At a point in the intercourse, Defendant flipped her on her stomach and held her down. R.B. testified that she was unable able to get her arms under her to push herself up and stop the Defendant. R.B. testified that, as the Defendant held her down, he penetrated her anus with his penis. R.B. testified that she pleaded for the Defendant to stop and, when he finally did stop, he commented, "Oh you asked me please. I'll stop now."

After the rape occurred, R.B. stayed with the Defendant until he fell asleep, and then she left. The Defendant reached out to her the next morning via phone calls and text messages. These text messages included the Defendant telling R.B.

7

that she had "[n]othing to be scared of anymore." R.B. responded to the Defendant the following: "You physically hurt me last night"; "You sexually assaulted me last night!!!"; and "When I tell you to stop multiple times, when you physically flip me over, when I tell you it hurts and you don't stop, that's wrong."

R.B.'s testimony and the text message exchange with Defendant support the jury's finding of second degree rape. Defendant held her down as he penetrated her and refused to stop when she asked him to do so. Though R.B. may have initially engaged willingly with the Defendant, she withdrew that consent, and Defendant ignored her pleas to stop. By holding her down, Defendant prevented her from resisting. When viewing this evidence in a light most favorable to the prosecution, we find that the jury could reasonably find Defendant guilty beyond a reasonable doubt of committing second degree rape.

Despite the above, Defendant argues the evidence presented at trial was insufficient to support his conviction for two main reasons—(1) R.B.'s testimony of the event is unconvincing in light of her behavior after the incident, and (2) even if R.B. had not consented to the anal intercourse, R.B. failed to present evidence that Defendant used force or threats of violence to prevent her from resisting.

First, as noted earlier, a single witness' testimony may be enough to sustain a conviction if the trier of fact believes it. At trial, the jury listened to the Defendant's version of the events through his police interviews and heard arguments made by Defendant's counsel regarding his theory of the case. Defendant claims that R.B. had wanted to try anal sex and had even bought butt plugs. However, R.B. countered that, although she had bought butt plugs and tried anal sex with the Defendant once prior to the November 24 rape, she did not enjoy the experience, made her displeasure known to the Defendant, and had thrown the

plugs away after that encounter. It was well-within the province of the jury to determine whose story was credible. *See State v. Robinson*, 51,830, pp. 11-12 (La. App. 2 Cir. 2/28/18), 246 So. 3d 725, 732 (citing *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022) ("The trier of fact makes credibility determinations and may accept or reject the testimony of any witness.").

Defendant argued both at trial and in his appeal that R.B. made false allegations of rape because she found out that the Defendant had been sleeping with other women. Defendant argues that R.B. made up this story as part of a revenge conspiracy with other women with whom he had relations. However, although R.B. had not initially reported the rape, the text messages introduced at trial reveal that she had described Defendant's action as a sexual assault the very next morning and well before she had known he was sleeping with other women.

Finally, Defendant argues that, at worst, his actions amounted to third degree rape, also known as simple rape. Defendant claims that there was no evidence that he used force or threats of physical violence such that it was reasonable for R.B. to believe that resistance was futile. Additionally, Defendant claims that R.B. had been drunk during the incident after a night of drinking.

La. R.S. 14:43(A) defines third degree rape as follows:

Third degree rape is a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of a victim because it is committed under any one or more of the following circumstances:

(1) When the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause and the offender knew or should have known of the victim's incapacity.

(2) When the victim, through unsoundness of mind, is temporarily or permanently incapable of understanding the nature of the act and

9

the offender knew or should have known of the victim's incapacity.

. . .

(4) When the offender acts without the consent of the victim.

The purpose of this statute is to criminalize the conduct of a defendant who merely acts without the consent of the victim or who takes advantage of a victim who is prevented from lawfully consenting and resisting the act due to "stupor or abnormal condition of mind produced by an intoxicating agent . . . ." *State v. Fruge*, 2009-1131, p. 11 (La. App. 3 Cir. 4/07/10), 34 So. 3d 422, 429; *see also State v. Clark*, 2004-901, p. 6 (La. App. 3 Cir. 12/08/04), 889 So. 2d 471, 475. We do not find any of the above to be applicable to this case. Foremost, R.B. testified that the Defendant had flipped her over and pushed her down to prevent her from getting up. This testimony alone is sufficient to show that force had been used. Further, contrary to the Defendant's assertions otherwise, R.B. had testified that she had not drank any alcohol the night of the incident. Therefore, R.B. was not hindered from resisting due to an intoxicating agent.

In short, we find that the evidence produced at trial, when viewed in the light most favorable to the prosecution, supported a conviction of second degree rape. Defendant's argument does not pertain to an insufficiency of evidence but rather to the weight and credibility afforded to the evidence by the jury. As the reviewing court, we do not reweigh the evidence. We find that sufficient evidence was presented that, if believed by the jury as it was, supports the Defendant's conviction. Therefore, Defendant's conviction of second degree rape is affirmed.

***Assignment of Error #2: Whether the trial court erred in allowing expert testimony regarding "delayed disclosure"***

We now turn to whether the trial court erred in allowing Nurse Martin to present expert testimony regarding delayed disclosure in sexual assault cases. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *State v. Wright*, 2011-0141, pp. 10-11 (La. 12/06/11), 79 So. 3d 309, 316. Additionally, the trial court enjoys wide discretion in determining who may be qualified as an expert and what expert testimony is admitted. *State v. Hampton*, 2015-1222, p. 11 (La. App. 4 Cir. 12/23/15), 183 So. 3d 769, 776.

Louisiana Code of Evidence article 702(A), at the time of Defendant's trial, provided:

> A. witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (2) The testimony is based on sufficient facts or data;
> (3) The testimony is the product of reliable principles and methods; and
> (4) The expert has reliably applied the principles and methods to the facts of the case.[5]

In criminal cases, expert testimony is permissible to provide the trier of fact with a basic knowledge and background on a subject outside of a general layperson's knowledge. *See State v. Bozeman*, 06-679, p. 6 (La. App. 5 Cir. 1/30/07), 951 So. 2d 1171, 1174. It should be introduced "for the purpose of giving the jurors a basis of knowledge and/or background information on a subject, based upon the expert's specialized knowledge or experience." *State v. Bosworth*, 593 So. 2d 1356, 1360 (La. App. 4th Cir. 1992).

---

[5] The legislature's amendments to article 702 came into effect on August 1, 2024.

On June 15, 2023, three days into trial, Defendant filed a formal opposition to Nurse Martin's testimony on delayed disclosure. Defendant argued in his motion and before the judge that the theory of delayed disclosure is outside of the knowledge, skill, experience, training, and education of Nurse Martin. Defense counsel argued that, while he did not object to qualifying Nurse Martin as an expert in sexual trauma or sexual trauma assault, her curriculum vitae did not address her knowledge or experience regarding delayed disclosure. The trial court overruled Defendant's objection, finding that theory of delayed disclosure is encompassed within the training and experience of handling sexual trauma and sexual trauma assault cases. At trial, Nurse Martin testified extensively about her training and experience in obtaining her SANE certification, including the requirement that she be recertified every year and participate in continuing education on the subject. She currently works as the SANE program coordinator at University Medical Center where she trains all new sexual assault nurses.

Based on the foregoing, we do not find that the trial court abused its discretion in allowing Nurse Martin's expert testimony. Nurse Martin's curriculum vitae and testimony reflect she has extensive knowledge regarding sexual assault cases ad victims. She handles sexual assault victims in her daily practice, some of whom, like B.B. and R.B., do not report their assault immediately. As such, the trial court was well within its discretion in allowing her to testify regarding the delayed disclosure of sexual assault victims.

On appeal, Defendant also argues that Nurse Martin's testimony should have been excluded because the theory of delayed disclosure only applies to child sexual assault victims. Disregarding the fact that the Defendant fails to cite authorities supporting his theory on delayed disclosure, we find that Defendant did not present

this argument before the trial court and, thus, failed to preserve the issue for appeal. The record reflects that the Defendant objected to Nurse Martin's testimony solely on the basis that the delayed disclosure theory fell outside her area of expertise. This other argument was not presented before the trial court, and "[i]t is settled that a new basis for an objection may not be urged for the first time on appeal." *State v. Butler*, 2012-2359, p. 4 (La. 5/17/13), 117 So. 3d 87, 89 (other citation omitted). Thus, we will not consider Defendant's new argument.

### Assignment of Error #3: Whether the trial court erred in admitting other crimes evidence without a limiting jury instruction

Next, we determine whether the trial court erred in admitting the testimony of the other alleged victims as other crimes evidence. Specifically, Defendant objects to (1) the testimony of M.M., his ex-wife whom he allegedly raped while married; (2) the testimony of D.R., the woman he allegedly sexually assaulted in 2019; and (3) the testimony of B.B., specifically in regards to an alleged assault in 2018. Similar to the admission of expert testimony, we review a trial court's decision on the admissibility of other crimes evidence for an abuse of discretion. *E.g. State v. Taylor*, 2016-1124, p. 18 (La. 12/01/16), 217 So. 3d 283, 296; *Wright,* 2011-0141, p. 11, 79 So. 3d at 316.

In Louisiana, all relevant evidence is admissible except as otherwise provided by law. La. C.E. art. 402. Typically, evidence regarding other crimes or wrongs perpetrated by a defendant is not admissible to prove his character. La. C.E. art. 404(B)(1)(a). Such evidence may be admissible for other purposes, such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident. *Id*. Evidence offered under La. C.E. art. 404(B) must have a tendency to prove a material fact at issue or to rebut one of the

13

defendant's defenses. *State v. Henderson*, 2012-2422, p. 1 (La. 1/04/13), 107 So. 3d 566, 567.

Additionally, La. C.E. art. 412.2(A) provides, "When an accused is charged with a crime involving sexually assaultive behavior . . . evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior . . . may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403." The purpose of La. C.E. art. 412.2 is to "loosen restrictions on 'other crimes' evidence," and the article applies when the defendant is "charged with a crime involving sexually assaultive behavior." *State v. Williams*, 2016-1192, p. 14 (La. App. 4 Cir. 10/18/17), 316 So. 3d 1145, 1156 (other citations omitted). The term "sexually assaultive behavior", in reference to other acts committed by a defendant, is a "'general expression' which the Legislature used intentionally in order to reference a broad range of behavior not limited by any list of 'technical' statutory definitions." *State v. Layton*, 2014-1910, p. 7 (La. 3/17/15), 168 So. 3d 358, 362 (quoting La. C.E. art. 412—1998 cmmt. (e)).

La. C.E. art. 403 provides a balancing test for the exclusion of relevant evidence. The articles provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." *Id*. The defendant does not have to have been charged, prosecuted, or convicted of the other bad act in order for the article 412.2 testimony to come into evidence. *Williams*, 2016-1192, p. 13, 316 So. 3d at 1155. Rather, if the other act involves sexually assaultive behavior, the trial court need only determine that the evidence's probative value outweighs its prejudicial effect. *Id*., 2016-1192, pp. 13-14, 316 So. 3d at 1155.

14

At trial, M.M. testified that she had a brief marriage with the Defendant. M.M. testified that, although she did not want to marry the Defendant, he pressured her into it. After multiple incidents throughout the course of the marriage, she testified that Defendant struck her over the head one day and told her that they needed to work on their marriage. When M.M. told Defendant that she had no interest in working on their marriage further, Defendant grabbed her by her hair, held her down, choked her, and raped her both vaginally and anally. M.M testified that the Defendant threatened to kill her if she told anyone about the rape.

D.R. testified that Defendant sexually assaulted her after a date in January 2019—less than a month after the alleged rape of B.B. and almost two months after the rape of R.B. On the night of the incident, Defendant assured D.R. that they would not do anything sexual, and she agreed to lie with him as they fell asleep. D.R. testified that she woke up in the middle of the night to Defendant rubbing his penis with her hand. When she attempted to flee the scene, Defendant grabbed her car keys and refused to give them to her, even after she held him at gunpoint. D.R. testified that she spent the night locked in a bedroom with her gun pointed at the door. In the morning, she was able to grab her car keys from the Defendant and leave.

Finally, B.B. testified that in August 2018, while she was living with the Defendant as a roommate, the Defendant had come into her room and placed her hand on his penis without her consent. This alleged assault occurred just months prior to R.B.'s rape and while Defendant was in a relationship with R.B.

The above testimony falls under article 412.2 as the actions described clearly involve sexually assaultive behavior. The testimony shows that the Defendant knowingly acted without women's consent on multiple occasions as none of the

women had consented to the above actions. The testimony also shows that the Defendant would not listen or comply with women's requests, as seen in M.M. and D.R.'s testimony. Lastly, M.M.'s testimony reveals that Defendant would pressure women into situations, used force and violence to get his way, and had engaged in anal sex prior to raping R.B. The trial court found that this testimony was intended to prove "knowledge, system, motive, and/or intent" under La. C.E. art. 404(B). We agree. Additionally, we find that the above testimony also relates to an absence of mistake in raping R.B. as the testimony shows he had a pattern of knowingly acting without consent.

Defendant argues on appeal that the prejudicial effect of the admitted testimony outweighed any probative value it had. We disagree. The term "unfair prejudice" used in article 403 refers to the tendency of the evidence "to lure the factfinder into declaring guilt on a ground different from the proof specific to the offense charged." *State v. Peterson*, 2018-1045, p. 23 (La. App. 4 Cir. 1/08/20), 289 So. 3d 93, 107 (quoting *Wright*, 2011-0141, p. 15, 79 So. 3d at 318). We do not find that the testimony from the other alleged victims lured the jury to convict on a ground different from the one charged. The testimony of the other victims goes right to the heart of the matter—whether the Defendant had to ability to knowingly commit forcible rape.

Assuming, only for the sake of argument, the trial court erred in admitting this evidence, we find that the admission of this evidence would be harmless error. *See State v. Higginbotham*, 2011-0564, p. 3 (La. 5/06/11), 60 So. 3d 621, 623 ("The erroneous admission of other crimes evidence is subject to harmless error review on appeal."). The relevant inquiry for harmless error is whether "the guilty verdict actually rendered was 'surely unattributable' to the error." *State v.*

16

*Campbell*, 2015-0017, pp. 27-28 (La. App. 4 Cir. 6/24/15), 171 So. 3d 1176, 1192 (quoting *Higginbotham*, 2011-0564, p. 3, 60 So. 3d at 623). As noted earlier, R.B.'s testimony and the text messages entered into evidence were sufficient to sustain Defendant's conviction. Thus, if any error was committed in allowing the testimony of the other alleged victims, we do not find that their testimony contributed to the verdict rendered.

Finally, Defendant argues for the first time in his appeal that the trial court should have issued a limiting jury instruction based on the other crimes evidence. The record indicates that Defendant did not raise this issue before the trial court. As noted earlier, we do not consider issues raised for the first time on appeal. *See also* La. C.Cr.P. art. 841(A) ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."). Therefore, we find this argument to be without merit.

### Assignment of Error #4: Whether the fifteen-year sentence imposed was constitutionally excessive

Lastly, we turn to whether the trial court erred in imposing a fifteen-year sentence on the Defendant. This also encompasses our error patent review. Defendant argues that his fifteen-year sentence is excessive because the trial court did not assign reasons for or individualize his sentence.

La. R.S. 14:42.1(B), at the time Defendant committed the rape in 2018, provided, "Whoever commits the crime of second degree rape shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension

of sentence."[6] On August 7, 2023, the trial court held a sentencing hearing. At the conclusion of the hearing, the trial court stated that it had "considered all the factors and circumstances provided under Louisiana law," and it sentenced Defendant to fifteen years at hard labor.

Although not raised by Defendant, we do find one error patent in Defendant's sentence. Namely, the trial court failed to specify whether the Defendant's sentence was to be served without the benefit of parole, probation, or suspension of sentence, outside of the mandatory two-year minimum. In light of this, we pretermit discussion of whether the Defendant's 15-year sentence is excessive, and we remand this matter back to the trial court for the limited purpose of determining what portion of the sentence should be served without the benefit of parole, probation, or suspension.

### DECREE

For the foregoing reasons, we affirm Defendant's conviction. We remand the case for the limited purpose of the trial court determining what portion of the Defendant's sentence will be served without the benefit of parole, probation, or suspension of sentence.

**CONVICTION AFFIRMED;**
**SENTENCE REMANDED**

---

[6] La. R.S. 14:42.1 was amended by the Legislature in 2020, and the statute now provides that the entire sentence shall be without benefit of probation, parole, or suspension of sentence.